William J. RAINS, Acting Regional Director of the Tenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD

v.

EAST TENNESSEE PACKING COMPANY, Independent Union of Meat Cutters and Packinghouse Employees (Unaffiliated), and its President, Thomas Murphy.

Civ. A. No. 5223.

United States District Court
E. D. Tennessee, N. D.

March 25, 1965.

William J. Rains, Arnold Ordman, Dominick L. Manoli, Julius G. Serot, Gilbert Cohen, James T. Youngblood, Frank H. Itkin, N. L. R. B., Adair, Goldthwaite, Stanford & Daniel, Albert M. Horn, Atlanta, Ga., for petitioner.

Len G. Broughton, Knoxville, Tenn., William P. Hutcheson, Humphreys, Banks & Hutcheson, Chattanooga, Tenn., for respondents.

ROBERT L. TAYLOR, Chief Judge.

William J. Rains, Acting Regional Director of the Tenth Region of the National Labor Relations Board (hereafter called Board) has petitioned this Court on

behalf of the Board pursuant to Section 10(j) of the National Labor Relations Act, as amended, (29 U.S.C. § 160(j)) [1], (hereafter called the Act) for injunctive relief pending the Board's disposition of the consolidated complaints of the General Counsel of the Board charging that the respondents have engaged in and are engaging in violations of Sections 8(a) (1), (2), (5) and 8(b) (1) (A) of the Act, (29 U.S.C. § 158(a) (1), (2), (5) ) [2] and (29 U.S.C. § 158(b) (1) (A)).[3]

The petitioner charges that following two complaints of Local Union 1110, United Packinghouse, Food and Allied Workers, AFL-CIO (hereafter referred to as affiliated union), General Counsel of the Board issued consolidated complaints pursuant to Section 10(b) of the Act, (29 U.S.C. § 160(b)) [4], alleging, among other things, that respondents engaged in and are engaging in unfair labor practices within the meaning of Section 8(a) (1), (2), (5), (29 U.S.C. § 158(a) (1),

1. "(j) The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

2. "(a) It shall be an unfair labor practice for an employer—
   "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
   "(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: Provided, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;
   *　*　*　*　*
   "(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

3. "(b) It shall be an unfair labor practice for a labor organization or its agents—
   "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; *　*　*"

4. "(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28."

(2), (5)), and Section 8(b) (1) (A), (29 U.S.C. § 158(b) (1) (A)), of the Act.

Petitioner further charges that there is reasonable cause to believe that the allegations of the consolidated complaints are true and that respondents have engaged in unfair labor practices within the meaning of the aforesaid sections of the Act.

Petitioner further charges that there is reasonable cause to believe that the respondent company is interfering with and coercing its employees in the exercise of their rights guaranteed in Section 7 of the Act, (29 U.S.C. § 157) [5]; is rendering unlawful assistance and support to a labor organization and is refusing to bargain collectively in good faith with the collective bargaining representatives of its employees, in violation of Section 8(a) (1), (2), (5) of the Act, (29 U.S.C. § 158(a) (1), (2), (5) ), and that the respondent union and its president Thomas Murphy, are restraining and coercing employees in the exercise of the rights guaranteed to them by Section 7 of the Act, in violation of Section 8(b) (1) (A), (29 U.S.C. § 158(b) (1) (A) ).

Respondent company, East Tennessee Packing Company, is a Tennessee corporation engaged in the processing and non-retail sale of meats and meat products, and maintains a plant in Knoxville, Tennessee.

Respondent, Independent Union of Meat Cutters and Packinghouse Employees, (hereafter called respondent unaffiliated union), is a labor organization within the meaning of Section 2(5), (29 U.S.C. § 152(5))[6], 8(a) and 8(b) of the Act, in which employees participate and which exists for the purpose of dealing with the employer concerning grievances, labor disputes, rates of pay, etc. Co-respondent, Thomas Murphy, is its President.

Affiliated union is a labor organization within the meaning of Section 2(5), 8(a) and 8(b) of the Act.

All production and maintenance employees at respondent company's Knoxville plant, including the transportation department, shipping department and leadmen, constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b), (29 U.S.C. § 159(b)) [7], of the Act.

---

5. "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

6. "(5) The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

7. "(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, That the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; or (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation or (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit

On October 9, 1964, in an election by secret ballot ordered by the Board in a decision dated September 21, 1964, and conducted under the supervision of the Regional Director of the Tenth Region of the Board, a majority of the company's employees designated the affiliated union as their representative for the purpose of collective bargaining with respondent company.

The Board certified the affiliated union as the exclusive bargaining representative of all the employees in the unit on December 14, 1964.

The petitioner further charges that since December 18, 1964, the affiliated union has requested, and continues to request, the respondent company to bargain collectively and to administer the existing collective bargaining agreement with it, but that the respondent company has refused and continues to refuse.

The petitioner further charges that on or about December 14, 1964 respondent company assisted and supported respondent unaffiliated union by recognizing it and by maintaining and administering the existing collective bargaining agreement with said respondent union as the exclusive bargaining representative of all the company's employees in the unit. That since that date, said respondent union has accepted recognition of respondent company and has administered the existing collective bargaining agreement with the respondent company as the exclusive bargaining representative of all the company's employees in the unit.

The petitioner further charges that there is reasonable cause to believe that the respondent unaffiliated union and respondent company and its president will continue to violate the terms of the Act in the ways hereinbefore mentioned.

The prayer of the petition seeks an order from this Court directing the respondents to appear and show cause why an injunction should not be issued as prayed for in the petition.

Respondent unaffiliated union and its president, Thomas Murphy, in their answer assert that the certification issued by the Board on December 14, 1964 after an election is illegal and invalid.

Respondent unaffiliated union asserts that the respondent company continued to recognize it as the exclusive bargaining agent of the employees of the company. It asserts that it was charged with this responsibility until the expiration of the collective bargaining agreement between respondent company and its employees which does not expire until July 25, 1965.

Respondent unaffiliated union requests the Court to deny the relief sought in the petition.

The answer of the respondent company denies that petitioner is entitled to the relief sought. It admits that it recognized and continues to recognize the unaffiliated union as the exclusive bargaining agent of its employees. It asserts that the respondent company and respondent unaffiliated union executed on July 25, 1962 the contract now in effect, but that notwithstanding such certification the affiliated union continued thereafter to infiltrate and undermine the unaffiliated union as the certified bargaining agent in defiance of both the certification and the contract.

Thereafter, the then unaffiliated union filed a petition with the Board to amend the certification in Case No. 10–RC–5200 so as to formally reflect an affiliation with Local 1110 of such international union. The Regional Director for the Tenth Region denied the request to amend the certification, which denial was thereafter affirmed by the Board in Washington. Thereafter, Local 1110 filed the petition in Case No. 10–RC–5722 in disregard of the fact that there was at that time in existence the contract

of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which

admits to membership, employees other than guards."

between respondent company and respondent union "which under every known Board precedent would constitute a bar to an election at that time, the National Labor Relations Board, through two (2) of its five (5) members and with a third member of such Board registering a strong dissent, an election was improperly ordered."

Respondent company asserts that the certification of the affiliated union, Local 1110, following the "void election" was void and that this was an election upon which the General Counsel bases its allegations of unlawful refusal to bargain and unlawful aid and assistance.

Respondent company asserts that the decision and direction of election of the National Labor Relations Board in Case No. 10–RC–5722 is null and void and without legal effect for the further reason that it was issued with the concurrence of only two members of the National Labor Relations Board, or less than the majority of five members; that of the three members participating in the decision, one dissented. Respondent company likewise requests the Court to deny the relief sought in the petition.

An order was issued by this Court on February 26, 1965 directing respondents to show cause on the 8th day of March, 1965 why the relief prayed for in the petition should not be granted. A hearing was held on that date in which extended argument for the respective parties was heard.

The record made before the Hearing Officer showed that a bargaining relationship had existed between an unaffiliated union and respondent company since 1942 and that subsequent to that recognition a contract was negotiated and entered into and following the original contract successive contracts were made periodically including the contract under which the parties are now working which was signed on July 25, 1962 and which will not expire until July 25, 1965.

On October 6, 1962, the old slate of officers of the first unaffiliated union was voted out and Webb and his slate of officers were elected in their stead. During that period, the company dealt with Webb. A motion was made in April, 1963 for the first unaffiliated union to affiliate with the international union. The company opposed the affiliation, but the employees voted 129 to 108 to affiliate. On May 24, 1963, Webb made a demand to reopen the wage clause of the contract. Attorney Hutcheson, the attorney for the company, wrote Webb on June 7, 1963 that in view of the affiliation with international he had advised the company to refuse to further recognize his group. On June 7, 1963 no one was claiming to represent the employees except Webb.

For a period of about two months the company was not dealing with any group and during this period another group developed to represent the employees. This was the group that is known as the respondent unaffiliated union.

Attorney Broughton made inquiry as to whether an election should be held and was advised that the contract barred an election. The respondent unaffiliated union claimed that it had a right to administer the contract. Its attorney asserted to the Board that the claims of the two unions caused confusion and that the Board should call an election to determine which union was to administer the contract.

The company has been paying check-off dues on 326 of its employees. The payments have been made to Bozeman, treasurer of the respondent unaffiliated union and for a time were held by him in escrow, but the escrow agreement was later cancelled.

On September 27, 1963 affiliated union filed an action against the respondent company, Civil Action No. 4822, in which it prayed, among other things, that the company be enjoined from dealing with the respondent unaffiliated group. Jurisdiction was based on Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185). A motion to dismiss the complaint was filed on September 30, 1963 by the respondent company. On September 30, 1963, Frank Webb filed a suit in this Court, Civil Action No. 4827, against the respondent company, and re-

spondent unaffiliated union, and a number of named employees of respondent unaffiliated union, in which he sought a preliminary injunction forbidding the company from dealing with respondent unaffiliated group. Jurisdiction was based on Title 28 U.S.C. §§ 411 and 412.

Motions to dismiss were filed by the company upon the ground that the petitions did not state a cause of action. A hearing on the motions in the two cases was had. The Court was advised during the arguments that the matters involved in the two suits were pending before the Board. At that time, the Court indicated that it desired a decision from the Board before trial of the suits on the merits. Finally, a voluntary non-suit, without prejudice, was taken by plaintiff in each case.

Attorney Broughton and respondent unaffiliated union presented a petition to the company on September 27, 1963 containing some 190 names in which recognition of respondent unaffiliated union as exclusive bargaining agent of the employees was sought from the company; and it has recognized the respondent unaffiliated union, of which Thomas Murphy is president, since September 27, 1963. The original petition presented by Mr. Broughton to the company contained 156 names, all of which had check-off cards showing that they were members of that union, except one. The petition was amended from time to time so as to raise the number, as previously indicated, to approximately 190.

Webb and his group were advised from time to time by George Rines and Nick Kurko, representatives of the AFL-CIO about union matters. The resolution to affiliate with the AFL-CIO was handed to Whaley, who was then chief steward of what is now the affiliated union, by Rines.

Prior to the election, the respondent company, through its vice president, announced to its employees "that all East Tennessee Packing Company employees will be able to settle once and for all any dispute over which the group—the Independent Union, or the Packinghouse Workers, AFL-CIO—a majority of you want. We are asking for an election as *early as possible*, and as soon as it is scheduled we will let you know."

Section 10(j) of the Act gives a district court jurisdiction "to grant to the Board such temporary relief or restraining order as it deems just and proper."

The principal contention of the respondents is that the Board acted capriciously and arbitrarily in calling an election of the employees to determine their exclusive collective bargaining agent to deal with the company and that the relief sought in the complaint should be denied.

In support of this contention, respondents assert that it is the policy of the Board and has been since its origin, with few exceptions, not to call an election among employees when an exclusive bargaining contract is in effect, and that the Board violated this policy in calling the election. This contention has substance and appeals to this Court. However, it appears to be unsupported by either statutory or decisional authority, and there is substantial authority justifying waiver of the "contract-bar" by the Board.

The history of the "contract-bar" rule is discussed in the case of Local 1545, United Brotherhood of Carpenters, etc. v. Vincent, 286 F.2d 127 (C.A.2). Judge Friendly in that case, by footnote, pointed out that a third exception to the general rule excluding jurisdiction of district courts to enjoin Board action was made in the case of Farmer v. United Electrical, Radio & Machine Workers of America, 93 U.S.App.D.C. 178, 211 F.2d 36, 39–40, certiorari denied 347 U.S. 943, 74 S.Ct. 638, 98 L.Ed. 1091. In that case, the Court of Appeals sustained jurisdiction of the district court "over a suit to enjoin the Board from declaring there was reasonable doubt as to the veracity of non-Communist affidavits and hence depriving the plaintiff union of status under § 9(h)." In Leedom v. International Union of Mine, Mill and Smelter Workers, 1956, 352 U.S. 145, 77 S.Ct. 154, 1 L.Ed.2d 201, the Supreme Court

affirmed the action of the district court in granting the injunction. See also N. L. R. B. v. Libbey-Owens-Ford Glass Co., 241 F.2d 831, 836 (C.A.4); N. L. R. B. v. Efco Manufacturing, Inc., 203 F.2d 458, 459 (C.A.1).

The only statutory restriction against the Board calling an election is found in Section 9(c) (3) of the Act which bars two elections in the same unit for certification or de-certification of a bargaining unit during one 12 months period. The courts appear to hold that the policy of the Board is normally to refuse to proceed to an election while an exclusive bargaining contract is outstanding, but that this is a policy which the Board, in its discretion, may apply or waive as the facts of a given case may demand in the interest of stability and fairness in a collective bargaining agreement.

The general rule with some exceptions is that a district court is without jurisdiction to enjoin Board directions in representational matters. One exception was laid down in Fay v. Douds, 172 F.2d 720, 723 (C.A.2), involving cases where the complaining party claims denial of constitutional rights "not transparently frivolous." Another was developed first by the Court of Appeals for the District of Columbia and later by the Supreme Court in Leedom v. Kyne, 101 U.S.App. D.C. 398, 249 F.2d 490 (1957), 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, where the Board had violated Section 9(b) (1).

■ The district court in ruling on an application for a preliminary injunction under 10(j) of the Act does not decide whether the accused violated the Act. If it appears from the pleadings that there is reasonable cause to believe that a violation has been committed, then an injunction is indicated. Brown, for and on Behalf of N. L. R. B. v. Pacific Telephone and Telegraph Company, 218 F.2d 542 (C.A.9); McLeod for and on Behalf of N. L. R. B. v. Compressed Air, Foundation, Tunnel, etc. Workers, 292 F.2d 358 (C.A.2); Lebus for and on Behalf of N. L. R. B. v. Manning, Maxwell and Moore, Incorporated, 218 F. Supp. 702 (D.C.W.D.La.)

As previously indicated, an unaffiliated union had been the bargaining agent of respondent company since 1942 and from 1950 through April 3, 1962 there were five National Labor Relations Board certifications of that unaffiliated union. In each of those certifications the group now apparently composing the affiliated union was the adversary. The proof shows in Case 10–RC–5722 that soon after the Board's certification of April 3, 1962 representatives of the group now composing the affiliated union continued their organizing efforts within the certified unaffiliated union. Rines and Kurko, international representatives of the Packinghouse Workers Union, aided and abetted representatives of the now affiliated group. Respondent company acknowledged the new officers as the representatives of the certified contracting bargaining agent. Thereafter, the pro-AFL-CIO group, with the aid of the Packinghouse Workers Union, supported a move to have the then unaffiliated union affiliate with the Packinghouse Workers Union and this effort was successful by a small majority. Thereupon, respondent company refused to recognize the affiliated union as the contracting party.

A motion was filed on July 5, 1963 with the Tenth Region of the National Labor Relations Board to amend the certification of 1962 to show that the true bargaining agent and contracting party no longer was an independent union, but was in fact United Packinghouse Workers, AFL-CIO, Local 1110. The Regional Director denied the motion and he was affirmed by the National Labor Relations Board sitting in Washington.

After that time, the majority of the employees submitted a petition to the respondent company advising that they did not wish the Packinghouse Workers Union to represent them for purposes of bargaining and asked the company to continue to deal with the group composing the respondent unaffiliated union. The company acceded to the request.

Thereafter, the affiliated union filed a petition for an election with the National Labor Relations Board which was denied

by the Regional Director of the Tenth Region upon the ground that there was an existing contract which constituted a bar to an election. From this denial, the affiliated union sought a review by the National Labor Relations Board. Two members of a three member panel directed a hearing to secure relevant facts. Subsequently, two members of another three member panel directed an election, the third registering a dissent. Under sec. 153(b) of Title 29, U.S.C., the Board has the right to delegate its powers to a panel of three of its members.

The Court doubts seriously the propriety of the action of the Board in refusing to apply its "contract-bar" rule and in failing to refuse to call an election. The purpose of the rule is to maintain stability in industrial relations. This question however is beyond this Court's prerogative. The record shows that the company has refused to deal with the affiliated union although it was certified as the exclusive bargaining agent by the Board. Under Section 8(a) (5) of the Act it is declared an unfair labor practice for an employer to refuse to bargain collectively with the representative of the employees of the unit involved and also an unfair labor practice for a labor organization or its agents to refuse to bargain collectively with an employer under Section 8(a) (3) of the Act.

True, relief may be obtained from the Board for the alleged unfair labor practices and if the order of the Board is not observed, then the Board may proceed for the enforcement of its order in the Court of Appeals. 29 U.S.C. § 160(e). This will take time.

The purpose of Section 10(j) of the Act was to maintain the status quo in a labor relations case pending the final outcome of the litigation in the appellate courts. In view of this purpose, it is believed that the prayer for an injunction should be sustained.

\* \* \*

It is, therefore, the order of this Court that respondent company, upon reasonable request, meet within a reasonable time and bargain collectively in good faith with affiliated union, Local No. 1110, as the exclusive bargaining representative of all of respondent company's employees in the unit described in subparagraph 5(f) of the complaint with respect to the matters covered in the existing collective bargaining agreement and to administer said collective bargaining agreement with affiliated union, Local No. 1110, until the certification of the Board certifying the affiliated union as the exclusive collective bargaining agent of the employees of the company is modified or vacated.

The respondent unaffiliated union and its president, Thomas Murphy, are restrained from continuing to act as the collective bargaining representative of the company's employees in the unit described in subparagraph 5(f) of the complaint, or administering the existing collective bargaining agreement with respondent company until the aforementioned certification of the Board is modified or vacated.

The findings and conclusions contained in this memorandum will be considered as findings and conclusions as required under Rule 52(a) of the Federal Rules of Civil Procedure.