**FARMER et al.**

**v.**

**UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA (UE), et al.**

**FARMER et al.**

**v.**

**AMERICAN COMMUNICATIONS ASS'N.**

**FARMER et al.**

**v.**

**INTERNATIONAL FUR & LEATHER WORKERS UNION OF UNITED STATES AND CANADA.**

**Nos. 11727–11729.**

United States Court of Appeals

District of Columbia Circuit.

Argued June 16, 1953.

Decided Dec. 4, 1953.

Writ of Certiorari Denied April 12, 1954.

See 74 S.Ct. 638.

Mr. David P. Findling, Associate General Counsel, National Labor Relations Board, Washington, D. C., of the bar of the Court of Appeals of New York, *pro hac vice*, by special leave of Court, with whom Mr. A. Norman Somers, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C., was on the brief for appellants.

Mr. David Scribner, New York City, of the bar of the Court of Appeals of New York, *pro hac vice*, by special leave of Court, for appellees United Electrical, Radio & Machine Workers of America et al. Mr. David Rein, Washington, D. C., entered an appearance for appellees.

Mr. Victor Rabinowitz, New York City, of the bar of the Court of Appeals of New York, *pro hac vice*, by special leave of Court, for appellee American Communications Ass'n. Mr. David Rein, Washington, D. C., entered an appearance for appellee.

Mr. Harold I. Cammer, New York City, of the bar of the Court of Appeals of New York, *pro hac vice*, by special leave of Court, for appellee International Fur & Leather Workers Union etc. Mr. David Rein, Washington, D. C., entered an appearance for appellee.

Before PRETTYMAN, PROCTOR and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Each of the three appellee labor unions in these consolidated appeals filed a suit for declaratory judgment and injunction in the District Court against appellants, all members of the National Labor Relations Board. These suits were based on the following course of events. The Unions' officers had filed non-Communist affidavits pursuant to the requirements of § 9(h) of the Labor Management Relations Act, 1947.[1] In due course, the Unions were notified that they were in compliance with the provisions of that section and hence entitled to avail themselves of the benefits of the Act. Thereafter, and during the effective period of such compliance, the Board, without a hearing, issued a *"Notice and Order"*[2] in each case which

[1]. 61 Stat. 146, 29 U.S.C.A. § 159(h), as amended, 65 Stat. 602 (1951), 29 U.S.C.A. § 159(h). This section provides: "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 10, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of section 35 A of the Criminal Code shall be applicable in respect to such affidavits."

[2]. The *Notice and Order* required the Union officers named therein to answer attached questionnaires (1) reaffirming the truth of all non-Communist affidavits previously filed by them with the Board and (2) stating that they had not been members or supporters of any organization believing in or teaching the overthrow of the United States Government by force or by any illegal or unconstitutional methods at any time since the filing of their first § 9(h) affidavits.

These are the events which preceded the issuance of the *Notice and Order*. The Board referred the § 9(h) affidavits filed with it by the officers here involved to the Department of Justice for investigation and possible perjury prosecution. The Department of Justice initi-

threatened that failure of the Unions' officers to affirm the truth of their non-Communist affidavits would, also without hearing,

> "result in a finding by the Board that there is reasonable doubt as to the truth and validity of your affidavits, and therefore in a declaration by the Board that [the respective organization] is not in compliance with filing requirements of Section 9(h) * * *."

The Board refused a request by the Unions that it rescind this *Notice and Order* and then provide an opportunity for hearing on whether it should issue. The gist of the Unions' complaint is that, although the Board's action is not authorized by the Act, nevertheless once they are found not to be in compliance, they will be barred, under the provisions of § 9(h), from participating in representation and unfair labor practice proceedings before the Board. They allege that they already have suffered and will continue to suffer irreparable damage unless the Board is permanently restrained from pursuing this allegedly unlawful action.

In the District Court, the Board moved to dismiss each case on the grounds that (1) the court was without jurisdiction of the subject matter, and (2) the complaints failed to state a claim which entitled the Unions to relief. At the consolidated hearing on these motions, it was stipulated that the court might make a final disposition of the cases since there was no dispute as to the facts. During the period which intervened between that hearing and the court's decision, the Board filed a "Supplemental Memorandum in Support of its Motion to Dismiss" wherein it offered not to "revoke * * * [the] unions' compliance status * * * without first giving * * * [them] an opportunity to be heard." During the same period, an affidavit was filed on behalf of the Unions charging that despite the Board's assurances to the court at the hearing that the *Notice and Order* under attack would not be made effective pending the court's determination of the cases, the "Board's Notice and Order is currently being effectuated against the plaintiff unions throughout the country." In support of this charge, the affidavit alleged the following: that although one of the Unions (UE) had been successful in a representation election, certification was withheld by the regional director upon instructions from the Board's general counsel not to grant certifications in representation proceedings to said Union or issue any complaints upon charges of unfair labor practices filed by said Union, pending a further determination in respect of the Board's *Notice and Order* involved herein; that upon information and belief such instructions were issued to all regional directors and this policy had also been applied by withholding disposition of cases before the Board on appeal from rulings of regional directors; that the Board's refusal of a request to rescind such instructions "is also proof of the lack of sincerity in the Board's statement to this Court in its Memorandum * * * that * * * [it] will not revoke plaintiff union's compliance status without first giving plaintiffs an opportunity to be heard." The Board made no attempt to deny these allegations.

In a memorandum opinion covering all three cases,[3] the District Court rejected

---

ated grand jury proceedings in the Southern District of New York to which the officers were called to testify. In their grand jury testimony, they pleaded their constitutional privilege in respect of the truth or falsity of their § 9(h) affidavits. Although it returned no indictment the grand jury issued and forwarded to the Board a report recommending that the Board declare the Unions out of compliance with § 9(h) because of the failure of their officers to testify as to the truthfulness of the affidavits. The Unions applied for an order expunging the report as unlawful and, after entry of the District Court judgment herein appealed from, their application was granted. Application of United Elec., Radio & Mach. Workers of America, D.C., S.D. N.Y.1953, 111 F.Supp. 858.

3. D.C.D.C. 1953, 110 F.Supp. 220.

the Board's contention that the action assailed here was authorized by an inherent power under the Act to protect Board processes from abuse and to prevent subversion of the congressional purpose by the filing of false affidavits. It viewed the Board's function under the Act, with respect to non-Communist affidavits, as "administrative only," and ruled "that the Board does not have authority to inquire as to the truth or falsity of the affidavits."[4] Support for this view was found in a congressional intent "to place upon the Department of Justice the duty and power to investigate and to prosecute violators of the Act"[5] and in the position previously adhered to by the Board that "such investigations are by the statute made a function of the Department of Justice."[6] The Board's action was held to be an assumption of power to declare a sanction which was neither expressly authorized by the Act nor intended by Congress. Although the memorandum opinion did not discuss the jurisdictional issues, the District Court's findings contain general language to the effect that it did have jurisdiction. Identical orders were entered in each case denying the Board's motion to dismiss, declaring the Board's *Notice and Order* a nullity and permanently restraining the Board from requiring anything of the Unions or their officers for the purpose of preserving their present compliance status under § 9(h).

■ We hold, for the reasons expressed in the trial court's memorandum, that the Board has no authority under the Act to deprive the Unions of their compliance status under § 9(h). The scheme of § 9(h) is clear. It imposes a criminal penalty for filing a false affidavit under § 9(h), in order to deter Communist officers from filing at all;

then the failure of such an officer to file is made the touchstone for barring his union from crucial benefits under the Act, as an incentive to the membership to rid itself of such leadership. There is nothing in the Act or in its legislative history or in good sense to indicate that Congress meant to go further and impose the drastic penalty of excluding the union from the Act's benefits because its officer had deceived the union as well as the Board by filing a false affidavit. We need not decide whether the union would be barred from the Act's benefits if its membership was aware of the alleged falsity of the affidavit. The Board makes no claim of such awareness here. To impose this penalty upon the great mass of innocent union members is as reckless as firing a shotgun into a crowd of people in an attempt to stop one who is picking their pockets.

■ We also hold that the District Court had jurisdiction of the subject matter. On this issue the Board argued, *inter alia,* that the Act makes the Unions' compliance with the filing requirements of § 9(h) a condition precedent to their participation in unfair labor practice proceedings under § 10[7] and certification proceedings under § 9;[8] that only Board action in a proceeding under § 10 is subject to judicial review under the Act; that the procedure initiated by the *Notice and Order* is merely a preliminary step to such reviewable Board action; hence, this preliminary step—like, for example, the issuance of an unfair labor practice complaint or the certification in a representation proceeding—involves the exercise of Board discretion which is not reviewable either in the Court of Appeals under the review provisions of the Act, or the District Court in the exercise of its equitable jurisdiction.

4. Id., 110 F.Supp. at page 221.

5. Ibid.

6. 14 NLRB Ann.Rep. 15 (1949).

7. National Labor Relations Act, as amended, 49 Stat. 453 (1935), 29 U.S.C.A. § 160, as amended, Labor Management Relations Act, 61 Stat. 146 (1947), 29 U.S.C.A. § 160.

8. National Labor Relations Act, 49 Stat. 453 (1935), 29 U.S.C.A. § 159, as amended, 61 Stat. 143 (1947), 29 U.S.C.A. § 159(a–e), 65 Stat. 601 (1951), 29 U.S.C.A. § 159(a–e).

It is clear enough that review of Board action in the Courts of Appeals is limited to unfair labor practice proceedings under § 10. But the question whether action, preliminary to such proceedings and plainly beyond the scope of statutory authority, may be reviewed by the District Court in the exercise of its equity power was twice reserved by the Supreme Court[9] to await "the required showing of unlawful action by the Board and resulting injury * * * whether by way of departure from statutory requirements or from those of due process of law."[10] We think the required showing is presented in these cases.

We have already expressed our view that the Board action assailed here is unlawful. That the injury resulting therefrom is "real, immediate, and incalculable"[11] is evident from the instructions issued by the Board's general counsel to its regional directors throughout the country, as described in the uncontradicted allegations of the affidavit filed on behalf of the Unions. These instructions have deprived and, but for the injunction issued below, would have continued to deprive the Unions of crucial benefits under the Act and this without any sort of prior hearing. In these circumstances, it can hardly be said that the action assailed is not ripe for review, or that the Unions should be required to exhaust a dubious opportunity for hearing offered to them after the ax had fallen, or that there is an adequate remedy at law for the injuries resulting from the Board's unlawful action. Under any reasonable view of such cases as Rochester Tel. Corp. v. United States,[12] Columbia Broadcasting System v. United States,[13] and Joint Anti-Fascist Refugee Committee v. McGrath,[14] the District Court must be held to have properly invoked its equitable jurisdiction to grant relief.[15]

Affirmed.

PROCTOR, Circuit Judge, died before the decision in these cases and took no part in their consideration.

9. American Federation of Labor v. National Labor Relations Board, 1940, 308 U.S. 401, 412, 60 S.Ct. 300, 84 L.Ed. 347; and Inland Empire District Council v. Millis, 1945, 325 U.S. 697, 700, 65 S.Ct. 1316, 89 L.Ed. 1877. See also Hourihan v. National Labor Relations Board, 1952, 91 U.S.App.D.C. 316, 317, note 4, 201 F.2d 187, 188, note 4, certiorari denied, 1953, 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359.

10. Inland Empire Council District v. Millis, 325 U.S. at page 700, 65 S.Ct. at page 1318, 89 L.Ed. 1877.

11. Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 175, 71 S.Ct. 624, 651, 95 L.Ed. 817, concurring opinion of Mr. Justice Douglas. See also American Federation of Labor v. Watson, 1946, 327 U.S. 582, 594–595, 66 S.Ct. 761, 90 L.Ed. 873.

12. 1939, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

13. 1942, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563.

14. 1951, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817.

15. See 60 Stat. 242–44, 5 U.S.C.A. §§ 1008, 1009.