387 F.2d 228
 128 U.S.App.D.C. 270
 CEDAR RAPIDS TELEVISION COMPANY (KCRG-TV) and WMT-TV, Inc.,
(WMT-TV), Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, H& B Communications
Corporation, Intervenor.
 No. 20783.
 United States Court of Appeals District of Columbia Circuit.
 Argued June 6, 1967.
Decided Sept. 27, 1967.
 
 Mr. Ernest W. Jennes, Washington, D.C., with whom Mr. William Malone, Denison, Tex., was on the brief, for petitioner, WMT-TV, Inc., argued on behalf of all petitioners.
 Mr. Robert D. Hadl, Counsel, F.C.C., with whom Asst. Atty. Gen., Donald F. Turner, Messrs. Henry Geller, Gen. Counsel, F.C.C., John H. Conlin, Associate Gen. Counsel, F.C.C., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for respondents. Mrs. Lenore G. Ehrig, Counsel, F.C.C., also entered an appearance for respondent Federal Communications Commission.
 Mr. George H. Shapiro, Washington, D.C., with whom Mr. Harry M. Plotkin, Washington, D.C., was on the brief. for intervenor.
 Messrs. R. Russell Eagan and Robert A. Beizer, Washington, D.C., were on The brief for petitioner Cedar Rapids Television Co. (KCRG-TV).
 Before BAZELON, Chief Judge, BASTIAN, Senior Circuit Judge, and ROBIN SON, Circuit Judge.
 BAZELON, Chief Judge:
 
 
 1
 This is a petition for review of an order of the Federal Communications Commission denying petition for an evidentiary hearing on the proposal of intervenor H & B Broadcasting Company, operator of a community antenna television system (CATV), to import distant television signals into Dubuque, Iowa.
 
 
 2
 F.C.C. regulations provide that no CATV system operating within the 'Grade A' contour[1] of a television station located within one of the hundred largest television markets may extend the signal of distant stations beyond their 'Grade B' contour unless the Commission has determined in an evidentiary hearing that importation of such 'distant signals' is consistent with the 'establishment and healthy maintenance of' free television.[2] Where the distant signal is imported into a market outside the 'Grade A' contour of a television station located in the top one hundred markets, the F.C.C. has discretion to order a hearing if, upon its own motion or the petition of interested parties, it appears that such importation would adversely affect the public interest.[3]
 
 
 3
 In the present case, H & B notified the Commission and other interested parties that it would add five new stations to its already existing system.[4] Although three of these new stations would be extended beyond their 'Grade B' contour, H & B sought no hearing or waiver of the rules. Petitioners, who are licensees of television stations in Cedar Rapids-Waterloo, then petitioned the Commission to hold the hearing prior to H & B's importation of distant signals. Dubuque, which is served by H & B, is not one of the largest one hundred markets, but Cedar Rapids-Waterloo is.[5] And petioners alleged that, although no television station presently places a 'Grade A' signal over Dubuque, the distant-signal rules are applicable because Cedar Rapids station KCRG-TV has a construction permit authorizing improvement of its facilities which, when completed, will enable it to place such a 'Grade A' signal over part of Dubuque. In the alternative, petitioners requested a hearing under the discretionary provisions of the rules.
 
 
 4
 The Commission held the mandatory hearing requirement inapplicable. It refused to cinsider KCRG-TV's outstanding construction permit, holding that its CATV rules are 'geared to' actual operating facilities. The Commission also refused to invoke the discretionary hearing procedures of the rules on the ground that petitioners had failed to demonstrate with sufficient specificity any likelihood that harm to free television in Dubuque and Cedar Rapids-Waterloo would be caused by CATV impact.
 
 
 5
 1. We can find no basis for concluding that the Commission's construction of the distant-signal rules is 'plainly erroneous or inconsistent with' the rules themselves, and thus the Commission's interpretation is entitled to 'controlling weight.'[6] The language of the distant-signal rules, as well as of the rules governing CATV carriage and nonduplication of television signals,[7] is consistent with the Commission's conclusion that its rules were designed to deal with actual television operations.[8] Similarly, the Commission has applied an 'actual operations' criterion in determining which CATV systems must meet the distant-signal requirements; those CATV systems beginning to carry distant signals in the top one hundred markets after February 15, 1966, must comply even if their proposed facilities were near completion just prior to that date.[9] Thus, the Commission's interpretation of the distant-signal rules is consistent with the entire regulatory scheme.
 
 
 6
 The record also supports the Commission's conclusion that 'it is much more desirable for administrative reasons to use operating facilities as the criterion in CATV cases.' It was argued below and here that there are often delays in the commencement of operations under a construction permit; in the case of KCRG-TV itself, for example, the new facilities were to be operational in February of this year, but the licensee sought and received a seven-month extension. Furthermore, a licensee may seeks a modification of a construction permit which could affect the stations's ultimate signal range and intensity. Thus, if the mandatory hearing requirements of the distant-signal rules were held applicable in situations involving proposed facilities not yet in operation, the Commission would be forced to assess proposed CATV distant-signal importation in an evidentiary hearing without the certainty of knowing whether or when the CATV system involved will be operating within a television station's predicted 'Grade A' contour. We think it permissible for the Commission to seek to avoid this potentially wasteful and time-consuming practice.
 
 
 7
 2. Petitioners advanced three grounds for seeking an evidentiary hearing under the discretionary procedures. They alleged (a) that H & B's proposal would have a detrimental effect upon the development of UHF in the area; (b) that increased CATV activity would have an adverse effect upon the public interest capabilities of existing television stations; and (c) that H & B might use its expanded facilities as the basis for developing a pay-television system.
 
 
 8
 (a) In its Second Report and Order on CATV,[10] the Commission made clear that its principal concern in restricting the importation of distant signals is the protection of independent, nonnetwork UHF stations which are likely to be economically weak even without CATV competition. It feared that CATV systems importing the programing of distant independent stations would fragment the already small market for independent programing and make success for fledgling UHF independents even more difficult.[11] But there has been no interest shown in any of the UHF allocations in Dubuque and Cedar Rapids-Waterloo. And the distant signals H & B proposed to carry are all network affiliates.
 
 
 9
 Against this background, it is clear that petitioners failed to present sufficient evidence to show that UHF development might be deterred by H & B's carriage of distant signals. Petitioners produced no evidence of any interest in the UHF channels available. Nor was there any evidence indicating that a new UHF entrant in Dubuque would be unable to receive a network affiliation and thereby receive protection aganst CATV activity through the carriage and nonduplication provisions of the rules. The absence of such proof is telling in light of the fact that H & B is entitled to carry seven stations, including affiliates of all three networks, a Chicago independent, and a Madison, Wisconsin educational station.[12] Without such proof, it is difficult to see how the addition of the three challenged network affiliates could deter the development of UHF in the area.
 
 
 10
 (b) Petitioners also failed to adduce evidence suggesting that existing television service is threatened by H & B's proposal. The stations in Cedar Rapids-Waterloo already receive substantial program exclusivity protection through the Commission's carriage and nonduplication rules, and they would be similarly protected against the programing of the network affiliates H & B proposed to import. And there is no evidence that the 'cumulative impact' of the several present and proposed CATV operations within their service areas has had or will have any effect upon the operation of the existing television stations in Cedar Rapids-Waterloo. We think the Commission could reasonably require some evidence of reduced revenues or lost advertising, and of the nature of the CATV operations.
 
 
 11
 (c) Finally, since petitioners made no showing of any present or potential harm due to CATV activity in their service areas, we think the Commission properly rejected their claim that a hearing was necessary to explore the paytelevision potential of H & B's operations. Even assuming such potential exists, there is no indication that paytelevision activity in Dubuque would cause harm to present or future free television service.
 
 
 12
 We agree with intervenor and Commission counsel that if hearings were required on the sort of 'bare-bone' petition filed here, then hearings would almost always be required. Perhaps the paucity of information explains the Commission's failure to make clear in its memorandum opinion the burden of proof it expects petitioners seeking an evidentiary hearing to meet. Although the record in this case is such as to make it pointless to remand for a fuller explication, we think it necessary to remind the Commission that particularly when, as here, it embarks into a new field of regulation, there is a special need for a fuller statement of its reasons.
 
 
 13
 Affirmed.
 
 BASTIAN, Senior Circuit Judge (dissenting):
 
 14
 Petitioners contended before the Commission that Section 74.1107 of the Commission's rules is applicable to the proposal of intervenor and, therefore, a hearing was required; and further that, in any event, the Commission should require a hearing because of the potential impact on television broadcasting. Both of these contentions were overruled by the Commission, which, without a hearing, ordered that intervenor be authorized to carry the additional signals.
 
 
 15
 I agree with dissenting Commissioner Cox that petitioners have asserted sufficient facts to require a hearing to determine the question of whether 'importation of distant signals (1) will, for all practical purposes, destory any possibility of local television service for Dubuque itself, and (2) will, if coupled with similar importation into comparable communities in the area, have such cumulative impact as to undercut the economic base of the Cedar Rapids-Waterloo stations, with consequent impact on the quality of the service they can provide to their audiences.'
 
 
 16
 In my opinion the order of the Commission should be set aside and the case remanded with instructions to the Commission to hold an evidentiary hearing.
 
 
 
 [1]
 A 'Grade A' contour is the line representing the service area in which a good picture is available 90 per cent of the time at 70 per cent of receiver locations. A 'Grade B' contour is the service area in which a good picture is available 90 per cent of the time at 50 per cent of receiver locations. See Sixth Report and Order, Federal Communications Commission, 17 Fed.Reg. 3905, 3915 (1952)
 
 
 [2]
 47 C.F.R. 74.1107(a). The regulations provide for a waiver of the requirements in appropriate cases. 47 C.F.R. 74.1109
 
 
 [3]
 47 C.F.R. 74.1107(c)
 
 
 [4]
 Such notification is required by 47 C.F.R. 74.1105
 
 
 [5]
 It is undisputed that Cedar Rapids-Waterloo is the 74th largest market
 
 
 [6]
 Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964)
 
 
 [7]
 The distant-signal rules, 47 C.F.R. 74.1107(a), apply to CATV systems 'operating within the predicted Grade A contour of a television broadcast station' located in one of the largest one hundred markets. 'Television broadcast station' is defined as 'any television broadcast station operating on a channel regularly assigned to its community * * *.' 47 C.F.R. 74.1101(b). The carriage and nonduplication provisions require that a 'CATV system shall carry the signals of operating or subsequently authorized and operating' television stations in certain situations, and refrain from doing so in other situations. 47 C.F.R. 74.1103. The only rights under the CATV rules apparently granted to the permittee of authorized but not operating broadcast facilities are the right to notice of proposed CATV service within the predicted Grade B contour of such facilities, 47 C.F.R. 74.1105, and, in some situations, to institute proceedings and participate as a party in interest. See Ultravision Broadcasting Co., 5 F.C.C.2d 217 (1966)
 
 
 [8]
 See also Greater Television, 5 F.C.C.2d 699 (1966)
 
 
 [9]
 47 C.F.R. 74.1107(d). See Buckeye Cablevision, Inc. v. Federal Communications Commission, U.S.App.D.C. , 387 F.2d 220, decided June 30, 1967
 
 
 [10]
 2 F.C.C.2d 725 (1966)
 
 
 [11]
 See Buckeye Cablevision, Inc. v. Federal Communications Commission, supra note 8, slip op. pp. 5-6, n. 14
 
 
 [12]
 H & B carried WMT-TV, Cedar Rapids (CBS); KCRG-TV, Cedar Rapids (ABC); KWWL-TV, Waterloo (NBC); WISC-TV, Madison (CBS); and WGN-TV, Chicago (Independent) prior to its proposal to expand service, and prior to the adoption of the Commission's CATV rules. H & B proposed to add WOC-TV, Davenport, Iowa (NBC); WHA-TV, Madison (Educational); WHBF-TV, Rock Island, Illinois (CBS); WQAD-TV, Moline, Illinois (ABC); and WREX-TV, Rockford, Illinois (ABC, CBS). Only the latter three are challenged