**BUCKS COUNTY CABLE TV, INC.**

v.

**The UNITED STATES of America**

**and**

**The Federal Communications Commission**

**and**

**Robert T. Bartley, Kenneth A. Cox, Rosel H. Hyde, Nicholas Johnson, H. Rex Lee, Robert E. Lee, James J. Wadsworth.**

**Civ. A. No. 68-2773.**

United States District Court
E. D. Pennsylvania.

March 28, 1969.

Howard Gittis, Alan J. Davis, of Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Arthur Blooston, Washington, D. C., for plaintiff.

Drew J. T. O'Keefe, Merna B. Marshall, Philadelphia, Pa., for the United States.

Lenore G. Ehrig, Washington, D. C., for FCC.

## OPINION AND ORDER

BODY, District Judge.

The plaintiff, Bucks County Cable TV, Inc., seeks a declaratory judgment and

preliminary injunction against the defendants, the Federal Communications Commission and individual Federal Communications Commissioners. The plaintiff contends that the Commission unduly delayed rendering a decision as to whether plaintiff could transmit certain New York signals, causing great harm to plaintiff's operations and financial investment. In addition, the plaintiff contends that its commencement of service in defiance of Commission Rule 74.1105 (c) [1] should not be subject to prosecution under 47 U.S.C. § 502 [2] because the rule is unconstitutional as applied to it as a result of the Commission's delay in hearing their case.

The Commission, on the other hand, argues that this Court does not have jurisdiction, and even if it did, the plaintiff is without "clean hands" in seeking equitable relief. In addition, the Commission argues that no undue delay exists in disposing of plaintiff's case before the Commission.

## I. FACTS

Plaintiff was organized to establish and operate a community antenna television system in various Bucks County communities. During 1965 the governing bodies of Warminster, Bensalem, Warrington, Lower Southampton and Falls Townships in Bucks County passed ordinances granting plaintiff franchises to establish and operate CATV systems in each of the townships. The Falls Township ordinance was enacted on December 2, 1965. Plaintiff's plan was to carry all of the Philadelphia VHF and UHF stations and the four New York independent stations. (KYW–TV, WFIL–TV, WCAU–TV, WIBF–TV, WPHL–TV, WUHY–TV, WKBS–TV, Philadelphia; WHYY–TV, Wilmington; and WNEW–TV, WOR–TV, WPIX, WNDT, New York).

On February 18, 1966 the Broadway Maintenance Corporation acquired Bucks County Cable TV, Inc. (Broadway Maintenance Corporation has been substituted as plaintiff in this action.) When Bucks County Cable TV, Inc. was purchased it had spent approximately $32,000 on the five antenna system franchises.

On March 8, 1966, to be effective on March 17, 1966, the Federal Communications Commission issued its Second Report and Order, 2 FCC 2d 725 (1966) and promulgated rules intended to regulate CATV systems for the first time. (47 CFR, Subpart K, Sections 74.1100 through 74.1109.) Section 74.1107(a) [3]

1. "Where a petition with respect to the proposed service is filed with the Commission, pursuant to § 74.1109 of this chapter, within thirty (30) days after notice, new service which is challenged in the petition shall not be commenced until after the Commission's ruling on the petition or on the interlocutory question of temporary relief pending further procedures; *Provided, however,* That service shall not be commenced in violation of the terms of any specified temporary relief or of the provisions of § 74.1107 of this chapter. Where no petition pursuant to § 74.1109 has been filed within thirty (30) days after notice, service may be commenced at any time thereafter, subject, however, to the provisions of § 74.1107."

2. "Any person who willfully and knowingly violates any rule, regulation, restriction, or condition made or imposed by the Commission under authority of this chapter, or any rule, regulation, restriction, or condition made or imposed by any international radio or wire communications treaty or convention, or regulations annexed thereto, to which the United States is or may hereafter become a party, shall, in addition to any other penalties provided by law, be punished, upon conviction thereof, by a fine of not more than $500 for each and every day during which such offense occurs."

3. "No CATV system operating in a community within the predicted Grade A contour of a television broadcast station in the 100 largest television markets shall extend the signal of a television broadcast station beyond the Grade B contour of that station, except upon a showing approved by the Commission that such extension would be consistent with the public interest, and specifically the establishment and healthy maintenance of television broadcast service in the area. Commission approval of a request to extend a signal in the foregoing circum-

restricted the carriage by CATV systems of so-called "distant signals" into homes in the one hundred largest television markets. In essence, the rule means that unless a television broadcasting station transmits a signal of at least Grade B in quality into one of the one hundred largest television markets, a CATV system operating within that market is prohibited from supplying that particular television station to its subscribers.

New York is the largest or number one television market in the country. Philadelphia is fourth. This rule meant that plaintiff could carry New York signals in Bucks County communities so long as the area served fell within the Grade B contour of the particular New York station being retransmitted. An exception might be made, however, under footnote 69 [4] of the Second Report which covers situations like plaintiff's where the community antenna system proposed to serve an area included within the Grade B contours of two major areas, viz., New York (1) and Philadelphia (4).

The rules further provided for notification prior to the commencement of new service. Notice goes to all television stations with Grade B signals in the community of the system. Section 74.1105(a) in addition provides that such notice by the new system shall be given:

" * * * within sixty (60) days after obtaining a franchise or entering into a lease or other arrangement to use facilities; in any event, no CATV system shall commence such operations until thirty (30) days after notice has been given * * * "

Section 74.1109 provides for procedures to be followed when a waiver of

rules is sought, such as the footnote 69 situation. This same section provides:

"Where a petition involves new service to subscribers (other than service coming within the provisions of 74.1107(a) of this chapter), the Commission will expedite its consideration and promptly issue a ruling whether on the merits of the petition or on the interlocutory question of temporary relief pending further procedures."

Section 74.1105(c) provides for an "automatic stay" on new service where another station applies for a waiver of the rules (as in the case of a footnote 69 situation):

"Where a petition with respect to the proposed service is filed with the Commission, pursuant to § 74.1109 of this chapter, within thirty (30) days after notice, new service which is challenged in the petition shall not be commenced until after the Commission's ruling on the petition or on the interlocutory question of temporary relief pending further procedures * * * * "

The plaintiff engaged the services of the George P. Adair Engineering Company, specialists in the field, to conduct a survey and prepare a report showing the Grade B contours of the New York stations. On August 26, 1966 Adair reported that although some of the five communities were within the Grade B contours of some of the New York television stations, only Falls Township was within the Grade B contour of all of the independent New York television stations. Since plaintiff had determined that it must carry the New York stations to be profitable, it decided to construct and market a CATV system in Falls Township only.

stances will be granted where the Commission, after consideration of the request and all related materials in a full evidentiary hearing, determines that the requisite showing has been made * * "

4. "If the major markets each fall within one another's grade B contour (e. g. Washington and Baltimore), this does not mean that there is no question as to the carriage by a Baltimore CATV system of the signals of Washington; for in doing

so and thus equalizing the quality of the more distant Washington signals, it might be changing the viewing habits of the Baltimore population and thus affecting the development of the Baltimore independent UHF station or stations. Such instances rarely arise, and can, we think, be dealt with by appropriate petition or Commission consideration in the usual case where a problem of this nature might arise." 2 FCC 2d 725, 786 (1966)

From September 1966 through June 17, 1968 the plaintiff started building its system. It laid most of its main trunk cable and a large part of its distribution cables, bought electronic equipment, hired permanent staff, and made certain long-term leases and agreements. By June 17, 1968 plaintiff's investments were in excess of $500,000.

On May 17, 1968, plaintiff gave notice of new service to area television stations required by Section 74.1105(a). On June 17, 1968 two Philadelphia UHF stations, Channels 17 and 29, filed a petition for waiver of the Rules with the Commission under Section 74.1109(a). The petition admitted that Falls Township was within the Grade B contours of the New York television stations but requested the Commission to prohibit plaintiff's proposed service on the ground that it would adversely affect the ability of their UHF stations to maintain a usable and high quality local service. (This is the kind of exception mentioned in footnote 69 of the Second Report, 2 FCC 2d at 786.) Although the Federal Communications Commission neither reviewed the merits of the UHF petition nor took other action on the petition, plaintiff's proposed new CATV service was "automatically stayed" under Section 74.1105(a). On July 17, 1968, the plaintiff filed an "Opposition" to the UHF petition with the FCC. On August 7, 1968, the UHF stations filed a reply.

On October 23, 1968 plaintiff filed a "Petition for Temporary Relief" with the FCC requesting that the FCC permit plaintiff to commence service from already constructed facilities pending a hearing. The FCC denied this request in a Memorandum Opinion and Order adopted January 22, 1969, after the first hearing had taken place before this Court. It stated, "Bucks County has made no showing to justify the extraordinary relief requested."

The evidence adduced by plaintiff shows that by October the delay by the FCC in hearing the petition by the UHF stations was seriously threatening plaintiff's business. The plaintiff had over 800 applications for service and a number of them had made their deposits. Some customers were canceling their contracts and others were complaining about plaintiff's failure to commence service. While plaintiff could have transmitted the Philadelphia stations, it was clearly the objected-to New York signals that make plaintiff's service attractive.

On November 15, 1968, the two objecting UHF stations filed their answer to plaintiff's petition for temporary relief. On November 25, 1968, plaintiff filed its reply with the Commission. On December 4, 1968, the UHF stations filed a Motion to Strike with the FCC, which was the last paper filed with the FCC by the parties on this matter now before this Court.

Then, on December 13, 1968, without having taken any action on the UHF stations' petitions, the FCC made public its Proposed Rule Making and Notice of Inquiry, Docket No. 18397. The proposal intended to "grandfather" the presently existing CATV systems which would otherwise be prohibited or restricted by the proposed rules, if they had commenced service, not in violation of existing rules, prior to December 20, 1968.

As part of the FCC's "Interim Procedures", under the proposed rules, paragraph 51 states:

"Effective upon the issuance of the Notice, the Commission will halt the hearing process in all top 100 market proceedings (including those with a 'footnote 69' issue) wherever it stands * * *"

Then paragraph 52 continues:

"Commission action on pending and future Section 74.1109 petitions of this nature will be held in abeyance pending the outcome of this procedure."

Under the proposed rules a 35-mile zone would replace the Grade B contour

and the "footnote 69" situation. Paragraph 49 states:

"We are proposing further to codify in the rules the so-called 'footnote 69' situation, i. e., where a central metropolitan area of one major market falls within the predicted contours of stations in another major market, so as to avoid the San Diego type of hearing and preserve the local character of such markets against the element of unfair competition. For this purpose it appears that the same 35 mile zone may be appropriate. * * * "

The statement continues:

"The attached rules would prohibit a CATV system operating in a community located wholly within the 35 mile zone of a television station in a major market from carrying the signal of a television station in another major market unless the community of the system is also located wholly within the 35 mile zone of the station in the other market or unless the retransmission consent requirement is fulfilled."

Thus, it would be possible for a system like Bucks County to transmit the New York stations if it (1) obtained consent to retransmit from the New York stations, and (2) obtained permission from the FCC under paragraph 52 of the proposed rules which reads:

"A CATV system may request relief from the proscription of Section 74.-1105(c) in order to carry such signals in areas which would be permissible under the attached proposed rules. Such relief will be granted only to the extent that the request is entirely consistent with the proposed rules and with the public interest, as evidenced by the considerations in the particular case."

On December 19, 1968, in disregard of the stay imposed by Section 74.1105(c)

and in order to obtain the benefit of the "grandfathering" provisions of the proposed new rules, the plaintiff commenced carriage of the four New York independent television stations on its Falls Township CATV system.[5]

The instant action was filed on December 24, 1968.

On January 8 and 9, 1969, the plaintiff tried to obtain permission from the four New York stations for the retransmission of their signals into Falls Township. Only Channel 13, the educational channel, agreed to give permission[6]; the others refused.

On January 13, 1969, hearing in this cause took place and was continued to January 28, 1969, for oral argument.

On January 22, 1969, the FCC adopted a Memorandum Opinion and Order which was released on January 23, 1969. The main purpose of the order was to grant plaintiff a hearing and to consolidate its case with that of twenty-four other stations in the *Delaware County Cable Television Company* case, Docket No. 18140, et al. The order states, inter alia, that the petitioners, the UHF stations, Channels 17 and 29, have the burden of proceeding and the burden of proof with respect to a determination of "whether carriage of predicted Grade B or better signals from New York City stations should be authorized."

The FCC stated that it took this action to make clear its position in light of the instant proceedings against it before this Court. It also said:

"We stress the requirement that Bucks County must comply with our rules and policies and emphasize that we intend to take all appropriate steps to bring about such compliance. * * * "

It went on to say:

"We also point out that while the matter of the objections to Bucks County's

---

5. There was testimony that the plaintiff consulted counsel who advised it that the "automatic stay" was unconstitutional as applied in plaintiff's case. N.T. 82–84 (January 13, 1969).

6. Channel 12, the educational channel from Wilmington, has objected to the carriage of the New York educational channel. (Whether a formal objection was filed with the FCC is not in the record) N.T. 70–71 (January 13, 1969).

carriage of New York signals is placed in hearing, the course of such hearing will, of course, be determined by our Notice of Proposed Rule Making and Notice of Inquiry in Docket No. 18397, released December 13, 1968 (see paragraph 51)."

The dissenting Commissioner Bartlett stated:

"I concur in authorizing Bucks County to carry the 'local' signals of the Philadelphia and Wilmington stations.

I dissent to the order for a hearing on carriage of signals from New York City stations. The order is meaningless, in view of the Commission's action of December 12, 1968, Docket No. 18397, Notice of Proposed Rule Making and Notice of Inquiry, which froze all such hearings."

On January 28, 1969, oral argument was had before this Court which held the matter under advisement.

On February 12, 1969, plaintiff filed three separate Petitions for Review in the United States Court of Appeals for the Third Circuit.[7] In a letter from plaintiff's counsel to this Court, dated February 11, 1969, it is stated that:

"These petitions are filed out of an abundance of caution. * * * Since the FCC may argue that its Notice of Rule Making, issued on December 12, 1968, was some kind of reviewable 'order' * * *"

Paragraph 12 of the petitions states:

"The time for filing a petition for review in this Court could arguably expire on February 11, 1969. Although petitioner has always maintained and continues to maintain that the District Court has jurisdiction. * * *"

The Petitions for Review ask for the same relief as the motions before this Court.

Since January 6, 1969 by agreement of counsel, enforcement against petitioner of Rule 74.1105(c) and Section 502 of the Communications Act, which carries a $500 per day penalty, has been stayed. This agreement has continued while this Court had this case under advisement.

## II. CONTENTIONS

### Plaintiff

(1) The plaintiff contends that it is entitled to a declaratory judgment [8] and that the so-called "automatic stay" provision of Section 74.1105(c) is unconstitutional and invalid as it has been applied to it.

(2) Plaintiff contends that under Section 74.1109(f) it was entitled to an "expeditious" and "prompt" decision from the FCC on the UHF stations' petitions for a waiver of the rule allowing Grade B contour retransmissions.

(3) Plaintiff contends that the FCC's delay and subsequent action taken towards adopting new rules on December 12, 1968, deprived plaintiff of due process in relation to its investments in its CATV business.

(4) Plaintiff finally contends that because the "automatic stay" is unconstitutionally applied to it, it is entitled to an injunction against prosecution for violating said "stay" under 47 U.S.C. § 502.

(5) Plaintiff desires a hearing under the old rules since it believes the UHF stations objecting to its service will be unable to sustain their burden. Under the new rules plaintiff would not be able to carry the New York signals for practical reasons.

(6) The plaintiff states that as far as an injunction is concerned:

"This doesn't prevent them [FCC] from stopping us tomorrow if they want to issue a rule to show cause why we shouldn't cease and desist. They can do that, but then they have to grant us a hearing." N.T. 18

---

7. The petitions seek review of the automatic stay provision, proposed rulemaking and inquiry, and order adopted January 22, 1969. (Petitions for Review Nos. 17,743–17,745).

8. 28 U.S.C. § 2201.

*Defendant*

(1) The defendant's main contention is that this Court does not have jurisdiction of the matter.

(2) The defendant contends that under 47 U.S.C. § 402, jurisdiction to review FCC action is properly in the United States Court of Appeals.

(3) Defendant also contends that plaintiff is without "clean hands" because its notice of commencing new service was not given at the proper time.

(4) Defendant finally contends that the UHF stations' petitions were not ready to be heard by the Commission since papers were served as late as December 4, 1968, concerning plaintiff's petition for temporary relief and these papers raised the issue of equality with Lower Bucks County Cablevision being able to receive New York signals for the first time.[9]

### III. JURISDICTION

This Court has jurisdiction over the subject matter of the instant complaint, sounding in equity, for a declaratory judgment and preliminary injunction.

The defendant has argued that plaintiff should have brought this action in the United States Court of Appeals under 47 U.S.C. § 402. This Court does not believe that the present posture of plaintiff's case before the FCC would enable it to bring an appeal in the Court of Appeals.

Section 402(b) of the Federal Communications Act concerns appeals from decisions and orders by the FCC on licenses, permits and cease and desist orders which are not involved here. While Section 402(a) concerns proceedings "to enjoin, set aside, annul or suspend any order by the Commission", the Court of Appeals is limited to review of only "final orders". Section 2342, 28 U.S.C. states:

"The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47."

■ The action which the FCC has taken on this case cannot be considered to be a "final order" within the meaning of Section 2342 although there is a direct and ascertainable effect on plaintiff.

On June 17, 1968, the "automatic stay" provision of Section 74.1105(c) went into effect upon the filing of the UHF station petition for waiver under Rule 74.1109. Such an occurrence involves no active participation of the FCC, seeks only to maintain the status quo, and anticipates further Commission action, in the form of a determination.

The FCC's "Notice of Proposed Rule Making and Notice of Inquiry" released December 13, 1968, while having a direct effect on plaintiff, was not a final order. Indeed, paragraphs 51 and 52, which called for a halt to hearings in situations such as plaintiff's are entitled "Interim Procedures". In United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956), the Court of Appeals' jurisdiction to hear the case was based upon the fact that the rule-making process under the Communications Act of 1934 had been completed.

The FCC's "Memorandum Opinion and Order" adopted January 22, 1969, among other things, orders a hearing on the UHF stations' petitions for waiver. The order, however, cannot serve to deprive this Court of jurisdiction. (Grant County Deposit Bank v. McCampbell, et al., 194 F.2d 469, 472, 31 A.L.R.2d 909 (6th Cir. 1952).) In reality, this order is of no practical value to plaintiff since under paragraphs 51 and 52 of the Notice given December 13, 1968, hearings in cases like plaintiffs are stayed pending adoption of final rules which will, in turn, eliminate the necessity for hearings.

---

9. Counsel for plaintiff stated that Bristol Township and Middletown Township served by Lower Bucks County Cablevision receive New York signals and both are farther away from New York than Falls Township served by plaintiff. N.T. 88.

The plaintiff is in the analogous situation as that presented by Elmo Division of Drive-X Co. v. Dixon, 121 U.S.App. D.C. 113, 348 F.2d 342 (1965). In that case the plaintiff sought to enjoin the Federal Trade Commission from bringing a new complaint where a former consent degree allegedly necessitated, instead, a reopening of the case. In upholding the District Court's jurisdiction, the court stated:

"We see no reason to bar District Court jurisdiction here, for relief in that court is appellant's only effective remedy * * *. The prospect of ultimate appellate review of any final order issuing out of the new complaint proceeding is not adequate * * *." At 344.

The court also states that "[s]tatutory provisions concerning review of agency action by the Court of Appeals do not in and of themselves, * * * preclude District Court jurisdiction * * *." At 343.

The Administrative Procedure Act provides for District Court jurisdiction in the kind of situation presented by this case. Section 702 provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

The legal wrong suffered by plaintiff is the unconstitutional application of Section 74.1105(c) discussed further in IV below.

Section 703 of the Administrative Procedure Act provides:

"The form of providing for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. * * *"

Plaintiff here seeks a declaratory judgment and preliminary injunction in the District Court.

Section 704 of the Administrative Procedure Act provides:

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in court are subject to judicial review."

In Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed. 2d 681 (1967) the Supreme Court upheld the jurisdiction of the District Court in a pre-enforcement suit for a declaratory judgment and injunction. The Commissioner of Food and Drugs had issued new regulations which plaintiff claimed exceeded his authority. In commenting on Section 704 the court stated:

"The legislative material elucidating that seminal act manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation. * * * the specific review provisions were designed to give an additional remedy and not to cut down more traditional channels of review. * * *" At 140–142, 87 S. Ct. at 1511, 1512.

Thus, the Administrative Procedure Act supplements the special statutory review procedures for final orders of the various agencies. Its review provisions utilize traditional equity actions for agency action not amounting to a final order, but which nonetheless directly affects plaintiff's rights. In interpreting "final agency action" found in Section 704, the Court states:

"The cases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way. Thus in Columbia Broadcasting System v. United States, 316 U.S. 407, [62 S.Ct. 1194, 86 L.Ed. 1563,] a suit under the Urgent Deficiencies Act, 38 Stat. 219, this Court

held reviewable a regulation of the Federal Communications Commission setting forth certain proscribed contractual arrangements between chain broadcasters and local stations. * *" At 149–150, 87 S.Ct. at 1516.

In Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir., 1961), the court upheld the District Court's jurisdiction in issuing an injunction against the National Labor Relations Board prohibiting the Board from delaying further its decision in the case. The court stated:

> "The 'final agency action' made reviewable under § 10(c) [§ 704] of the Administrative Procedure Act need not necessarily be read synonymous with 'a final order of the Board granting or denying in whole or in part the relief sought * * *' made reviewable under § 10(f) of the National Labor Relations Act. * * * When a party suffers a legal wrong from continuing agency delay and, as here, there is no other adequate administrative or judicial remedy, the delay is final agency action for which § 10 of the [A.P.A.] does provide an effective remedy." At 865–866.

■ The "automatic stay" provision found in Section 74.1105(c) has an impact on plaintiff which is sufficiently direct and immediate [10] so as to constitute final action. The delay by the FCC increases this impact. The stay is direct in that it is focused specifically at plaintiff on the basis of the petitions for waiver of rules filed by Channels 17 and 29. The result could not be more immediate in that the filing of their petitions stopped plaintiff from commencing service, notwithstanding the fact that the merits of the petitions were not even considered by the FCC.

■ Plaintiff has exhausted all of its administrative remedies. In November, it applied for temporary relief pending the FCC decision but this was denied by the FCC on January 22, 1969. The fact that the FCC granted a hearing in plaintiff's case provides plaintiff with no relief since the hearing is stayed under the "Interim Procedures" of the Notice of Proposed Rule Making and Notice of Inquiry" (December 13, 1968).

■ There is no question that there is a case or controversy presented to this Court which is ripe for decision by way of a declaratory judgment. Besides the impact the provisions of Section 74.1105 (c) have, there is the real threat of sanctions being imposed under 47 U.S.C. § 502 which can amount to $500 per day upon conviction. The FCC's order of January 22, 1969 states, in this connection, "We stress the requirement that Bucks County must comply with our rules and policies and emphasize that we intend to take all appropriate steps to bring about such compliance."

■ The defendants raised the claim that plaintiff had "unclean hands" and therefore could not obtain equity. The defendants claim that had plaintiff given notice in the proper manner called for by Section 74.1105(a),[11] they would not have risked their money since the automatic stay would have been activated a couple years earlier. The defendants claim that the plaintiff should have given notice "within sixty (60) days after obtaining a franchise or entering into a lease or

---

10. Abbott Laboratories v. Gardner, supra, at 152–154, 87 S.Ct. 1507, 18 L.Ed.2d 681.

11. "No CATV system shall commence operations in a community or commence supplying to its subscribers the signal of any television broadcast station carried beyond the Grade B contour of the station, unless the system has given prior notice of the proposed new service to the licensee or permittee of any television broadcast station within whose predicted Grade B contour the system operates or will operate, and to the licensee or permittee of any 100 watts or higher power translator station operating in the community of the system, and has furnished a copy of each such notification to the Federal Communications Commission within sixty (60) days after obtaining a franchise or entering into a lease or other arrangement to all facilities; in any event no CATV system shall commence such operations until thirty (30) days after notice has been given. * * *"

other arrangement to use facilities." The Falls Township franchise,· however, was obtained on December 21, 1965. The Second Report and Order, 2 FCC 2d 725, did not become effective until March 17, 1966. The plaintiff could not therefore comply with the rule requiring notice at least within sixty days of obtaining a franchise. The specific meaning of the notice provision could be the subject of reasonable and differing interpretations for a station in plaintiff's position. Plaintiff did give notice thirty days before it intended to commence service. This would seem to comply with Section 74.1105(a) which reads in part, "In any event, no CATV system shall commence such operations until thirty (30) days after notice has been given."

In any case, it is difficult to see how this oversight or misjudgment can bear at all upon the actions of the FCC with respect to a determination on the UHF stations' petitions for waiver.

Finally, this Court does not believe that plaintiff has an adequate remedy at law. Indeed, time is of the essence for plaintiff to resolve the proceedings before the FCC. On the facts before this Court there is no way of estimating the damage to plaintiff by the delay caused by the FCC.

## IV. SUBSTANTIVE ISSUES

 This Court now turns to a discussion of the merits of plaintiff's contention that it was illegally deprived of a "prompt" and "expeditious" determination by the FCC on the UHF stations' petitions for waiver of rules. Unless the FCC failed to follow its own rules or acted in an arbitrary and capricious manner, this Court would be unable to grant plaintiff the relief it seeks. However, having carefully considered the evidence presented and subsequent oral argument, this Court has decided that the FCC failed to follow its own rules and delayed its determination in such a way as to deprive the plaintiff of due process of law. Accordingly, the relief requested—a de-

claratory judgment and preliminary injunction in plaintiff's favor—will be granted. Being both mindful of the Federal Communications Commission's regulatory responsibilities in this area, see United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed. 2d 1001 (1968), and the possible adverse impact this decision may have on the overall policy of the FCC in the growing area of CATV (see "Notice of Proposed Rule Making and Notice of Inquiry", December 12, 1968) this Court cannot ignore the injustice in an individual case.

The evidence set out on the record by plaintiff went largely uncontradicted by counsel for the FCC.[12] The defendants, on the other hand, rely heavily upon their motion to dismiss for lack of jurisdiction. The defendants made very little effort to defend the specific course of action taken with respect to the individual plaintiff in proceedings before the FCC. Thus, once the jurisdictional questions were resolved, it was really only up· to this Court to decide whether what happened entitled plaintiff to relief.

Plaintiff's CATV system was due to commence operations in July, but because two UHF stations, Channels 17 and 29 of Philadelphia, filed petitions for waiver of rules under Section 74.1109, plaintiff's service was "automatically stayed" under 74.1105(c) on June 17, 1968. Section 74.1105(c) provides in part, "new service which is challenged in the petition shall not be commenced until after the Commission's ruling on the petition."

Section 74.1109(f) provides, in part: "Where a petition involves new service to subscribers \* \* \* *the Commission will expedite its consideration and promptly issue a ruling* either on the merits of the petition or on the interlocutory question of temporary relief pending further procedures." (Emphasis supplied)

The Second Report and Order, 2 FCC 2d 725, 786 (1966), states that, "[i]n view of the nature of the problem, the Commission will give expedited treatment to

---

12. The defendants did not offer any evidence for the record. N.T. 89.

petitions in this area." This is the crux of plaintiff's complaint.

The last paper concerning the petition for waiver of the rule was filed on August 7, 1968 by the plaintiff. At this point the case was ready for consideration by the Commission. The FCC, however, took no action on the petitions for waiver until January 22, 1969, during the pendency of this cause, when it ordered a hearing.

On October 23, 1968, the plaintiff filed for temporary relief with the FCC. The UHF stations filed a motion to strike with the FCC on December 4, 1968, which was the last paper filed in the matter of temporary relief. The FCC took no action on this application until January 22, 1969, during the pendency of this action, when it denied temporary relief.

The defendants attempted to argue that the case was not ready for determination by the FCC because the last paper filed was done in December 1968. This, however, belies the fact that the FCC failed to take "expeditious" action on the petitions for waiver which were ready for determination in August 1968. The fact that plaintiff filed for temporary relief when it was losing its business, due to the uncertainty created by the FCC's delay in disposing of the petitions for waiver, should not be held against it.

The fact that any station which has been given notice of the new service can halt a new station's operations simply by filing for a waiver of the rules under Section 74.1109 necessitates a very close look into the procedures adopted to resolve such disputes. In addition, neither the merits of the UHF petitions nor the pleadings were considered before the "automatic stay" of Section 74.1105(c) went into effect. Clearly, an expeditious and prompt determination would appear to be the minimum required. Where there are factual problems, a hearing such as has been ordered by the FCC would seem to be necessary.

There is little doubt in the mind of this Court that the FCC was anticipating its proposed changes in the rules when it refused to take up the petitions of the two UHF stations for a waiver of the rules. This Court does not believe that the FCC should be allowed to increase the effectiveness of an as-then unannounced policy by disregarding the currently existing policy of dealing with such matters in an expeditious manner. The change in FCC practices embodied in the proposed new rules and notice of inquiry effective December 20, 1968, should not be allowed to cut plaintiff off completely from rights which until that time had only been temporarily delayed through the stay.

The defendants rely upon United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968) where the Supreme Court upheld the FCC's order halting respondent's (Southwestern Cable) transmission of signals from Los Angeles into the San Diego area. The opposition to this transmission petitioned for relief from the FCC under Section 74.1107 and Section 74.1109. The respondents contended that the FCC could not issue its prohibitory order without first providing them with a hearing. They contend that the order was really a cease and desist order. The Supreme Court, however, held that:

> "The Commissioners order *limiting further expansion* of respondents' service *pending appropriate hearings* did not exceed or abuse its authority under the Communications Act. * * *" (Emphasis supplied) At 181, 88 S.Ct. at 2007.

Important to the *Southwestern Cable* case then is the fact that appropriate hearings were to be held. In addition, *Southwestern Cable* did not involve an "automatic stay" as in the instant case. The Supreme Court states:

> "*After consideration of the petition and of various responsive pleadings,* the Commission restricted the expansion of respondents' service in areas in which they had not operated on February 15, 1966, pending hearings to be conducted on the merits of Mid-

west's compaints." (Emphasis supplied) At 160, 88 S.Ct. at 1996.

Finally, the respondent in *Southwestern Cable*, unlike the instant plaintiff, had the burden under Section 74.1109(a) of proving "that such extension would be consistent with the public interest." In the instant case the two UHF stations have the burden on "whether carriage of predicted Grade B or better signals from the New York City stations should be authorized." (Memorandum Opinion and Order, Docket No. 18432, adopted FCC January 22, 1969. See also Section 74.1109(c).) The Second Report and Order, 2 FCC 2d 725, 786 (1966), states in this connection, "With possibly only the rarest exception, CATV activity which does not involve extension of a signal beyond its Grade B contour may freely continue." The UHF stations, in such situations, apparently bear a considerable burden in seeking a waiver of the rules. Cedar Rapids Television Co. v. FCC, 128 U.S.App.D.C. 270, 387 F.2d 228 (1967).

Clearly, there may be good reasons for *denying* hearings to persons who *object* to new service and seek a *waiver* of the rules. The court in *Cedar Rapids* states:

> "If hearings were required on the sort of 'barebone' petition filed here, then hearings would almost always be required." At 232.

In Titusville Cable TV, Inc. v. United States and FCC, 404 F.2d 1187 (3rd Cir. 1968) the court upheld the denial without evidentiary hearings of petitions for waiver of the non-duplication provisions of 47 C.F.R. 74.1103(f). Agreeing with the need for flexible procedures found in Section 74.1109, the court states:

> "When general rules are enacted in a valid rule-making proceeding they may be applied by the Commission without individual adjudicatory hearings unless a party shows reasons why the public interest would be served by an individualized waiver of the rules. * * *" At 1192.

It is, indeed, unfair to expect that the person *seeking a waiver of the rules* can benefit by the FCC's delay and gain all it asks, while the party without the burden loses all without having received any determination at all. Such was the situation confronting this Court.

While the FCC can make "such orders, not inconsistent with this [Act], as may be necessary in the execution of its functions", 47 U.S.C. § 154(i), it is difficult to see how the continued delay under the stay provision conforms to this. In fact, about all this stay did was to preserve the status quo until the FCC could make effective new procedures which would effectively eliminate the need for the FCC to take any further action in the case. Such does not appear to be a valid use of 47 U.S.C. § 154(i).

In Farmer v. United Electrical, Radio and Machine Workers, 93 U.S.App.D.C. 178, 211 F.2d 36 (1953), cert. denied 347 U.S. 943, 74 S.Ct. 638, 98 L.Ed. 1091 (1954), the court upheld an injunction and declaratory judgment against the NLRB's attempt to enforce verification of noncommunist affidavits submitted by union officials without a prior hearing. In holding that the NLRB had no authority to require verification and that the District Court had jurisdiction, the court stated:

> "These instructions [prohibiting unions from filing complaints] have deprived and, *but for the injunction issued below, would have continued to deprive the Unions of crucial benefits under the Act and this without any sort of prior hearing.* In these circumstances, *it can hardly be said* that the action assailed is not ripe for review, *or that the Unions should be required to exhaust a dubious opportunity for a hearing offered to them after the ax had fallen,* or that there is an adequate remedy at law for the injuries resulting from the Board's unlawful action. * * *" At 40. [Emphasis supplied]

In Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961) the court upheld a District Court's injunction against further hearings that justified fears of lengthy and costly hearings. In *Deering* several years were involved. In

the instant case the delay was a matter of at least four months.[13] The interests involved in the instant case, however, concerned the very existence of a business enterprise and the statute recognized that where new service was involved a speedy decision was necessary, " * * * the Commission will expedite its consideration."

### ORDER

Accordingly, this 28th day of March, 1969, it is ordered that the "automatic stay" provision of Section 74.1105(c) of the FCC rules pertaining to CATV system be declared unconstitutional as it was applied to Bucks County Cable TV, Inc. Further, this Court does grant a preliminary injunction[14] against the prosecution of the plaintiff under 47 U.S.C. § 502 for commencing carriage of New York stations on and after December 19, 1968.

---

13. "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitution and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; * * *." Section 706, Administrative Procedure Act.

14. See Hynes v. Grimes Packing Co., 337 U.S. 86, 98–99, 69 S.Ct. 968, 93 L.Ed. 1231 (1949).