**WHEELING ANTENNA COMPANY, Inc., Petitioner,**

**v.**

**UNITED STATES of America and Federal Communications Commission, Respondents.**

**WTRF–TV, Inc., Intervenor.**

**No. 11649.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 11, 1968.

Decided Feb. 28, 1968.

Morton L. Berfield, Washington, D. C. (Cohen & Berfield, Washington, D. C., Jay T. McCamic, and McCamic & McCamic, Wheeling, W. Va., on brief), for petitioner.

John H. Conlin, Associate General Counsel, Federal Communications Commission (Henry Geller, General Counsel, Lenore G. Ehrig, William L. Fishman, Counsel, Federal Communications Commission, Donald F. Turner, Asst. Atty. Gen., and Howard E. Shapiro, Attorney, Department of Justice, on brief), for respondents.

B. Dwight Perry, Washington, D. C. (Thomas H. Wall and Alan C. Campbell, Washington, D. C., on brief), for intervenor.

Before BRYAN and BUTZNER, Circuit Judges, and KELLAM, District Judge.

ALBERT V. BRYAN, Circuit Judge:

The operator at Wheeling, West Virginia of a community antenna television system (CATV)[1], Wheeling Antenna Company, Inc. (WACO) was refused by the Federal Communications Commission a waiver of section 74.1103(e) of its rules[2], forbidding the company to carry from other television stations a duplication of any program which on the same day is propagated by the Wheeling station, WTRF-TV.[3] On WACO's petition for review here,[4] we uphold the order.

The rule sought to be waived reads as follows:

"(e) *Stations entitled to program exclusivity.*

Any such [CATV] system which operates, in whole or in part, within the Grade B or higher priority contour of any commercial * * * station * * *, and which carries the signal of such station, shall, upon request of the station licensee or permittee, maintain the station's exclusivity as a program outlet against lower priority or more distant duplicating signals, but not against signals of equal priority. * * *" 47 CFR § 74.1103(e).

A description of the operations of CATV systems with an outline of the Commission's national and administrative policy in assigning station locations, and a reference to its regulations will help towards an understanding of the meaning and play of the rule. The systems provide a supplementary *local* service to video. Some regions, such as those with mountainous terrain, have natural opaque obstructions to satisfac-

---

1. The Commission's definition:

"(a) *Community antenna television systems.* The term 'community antenna television system' ('CATV system') means any facility which, in whole or in part, receives directly or indirectly over the air and amplifies or otherwise modifies the signals transmitting programs broadcast by one or more television stations and distributes such signals by wire or cable to subscribing members of the public who pay for such service, but such term shall not include (1) any such facility which serves fewer than 50 subscribers, or (2) any such facility which serves only the residents of one or more apartment dwellings under common ownership, control, or management, and commercial establishments located on the premises of such an apartment house." 47 CFR § 21.710(a).

2. The rules of the Commission cited infra are codified in 47 CFR § 21.710 et seq.

3. Wheeling Antenna Company, Inc., FCC 67-654-0359, Adopted June 7, 1967, Released June 13, 1967.

4. Judicial Review Act § 1, 28 USC § 2342 (1) (Supp.1967).

WACO noted that the question whether the FCC has authority to regulate CATV is under review by the Supreme Court. Southwestern Cable Co. v. FCC, 378 F. 2d 118 (9 Cir. 1967), cert. granted, 389 U.S. 911, 88 S.Ct. 235, 19 L.Ed.2d 258 (U.S. Oct. 24, 1967) (No. 363). Accordingly, WACO does not argue that point here, but instead reserves it pending the decision of the issue by the Supreme Court.

tory teleview. To surmount them, CATV places its antennae in nearby elevated locations where reception is favorable. They receive the signals (transmittals) "off-the-air" and relay them by cable to the inaccessible areas. Televiewers there may for a fee become subscribers and have their sets connected to the cable. Admittedly, Wheeling is one of those inaccessible areas in need of CATV help. As the city's local system since 1952, WACO has endeavored to respond to the demand, carrying 12 channels from eight or nine televisors.

The Commission is entrusted with fairly and efficiently licensing stations over the United States. Communications Act of 1934, 47 USC §§ 151, 301, 307(b) ; Carter Mountain Transmission Corp. v. FCC, 116 U.S.App.D.C. 93, 321 F.2d 359, 362 (1963) cert. den. 375 U.S. 951, 84 S.Ct. 442, 11 L.Ed.2d 312; see Allen B. Dumont Laboratories v. Carroll, 184 F.2d 153, 155 (3 Cir. 1950). In assigning them the Commission has prescribed the local community and service zones of each. WTRF-TV was granted a license in 1953 and, with regular renewals, has since been on the air as a station for Wheeling and its surroundings. Only 46 miles away in Pittsburg, Pennsylvania, WIIC was a similar licensee. Both are affiliates of the National Broadcasting Company.

Towards the regulation of CATV, the Commission has established a predicted scope of each station. These predictions, three in number, are designated as contours. Expressed in terms of field intensities, they are in order of priority as follows: (1) Principal community contour, which "means the signal contour, which a television station is required to place over its entire principal community", 47 CFR 74.1103(c). This contour encompasses an area with a predicted reception acceptable to the median observer at 90% of the receiver locations 90% of the time. (2) Grade A contour

denotes a field in which the predicted service is 70% and 90%, respectively, and (3) Grade B contour demarks an area with a quality of service acceptable at 50% of the locations 90% of the time. See 47 CFR §§ 21.710(c), 73.683(a) and 73.685(a).

Abridged, the particular rule under consideration requires a CATV system carrying the signals of several stations to exclude from its transmissions, on request of a station of higher priority, the program of a station having a lower contour grade, when the superior one is emitting the same production on the same day.[5] Concededly, in respect to Wheeling, WTRF-TV has a principal community contour, the top rating, and WIIC has the lesser grade A contour. In short, WACO cannot duplicate a WIIC picture on the day it is also on the air from WTRF-TV. Procedural rules permit the Commission on CATV's petition to waive the exclusivity requirement. 47 CFR § 74.1109.

The case before us for vacation of the Commission's order is built on the notice of WTRF-TV to WACO of its intention to invoke the exclusivity rule, the petition with the supporting papers of WACO for the waiver, and the Commission's declination. WACO attacks the deletion of WIIC's carriage on this factual assertion: that in truth the quality of the picture at Wheeling from WIIC off-the-air, that is on a private receiver unaided by CATV, is equal or superior to that of the local station, WTRF-TV. The argument then is that the accordance of contour priority to WTRF-TV rests on a false premise. It is based, says WACO, on the general presumption that the local televisional umbrella is always stronger than imported coverage. Admittedly, continues WACO, a contour is fixed only on a prediction of the station's strength; it is the theoretically measured equivalent of the off-the-air reception in the area

5. The limitation of the exclusivity of the same day and a requirement of notice by the superior to the subordinate station of

its insistence upon exclusivity are written in 47 CFR § 74.1103(f).

to be classified. Hence when the hypothesis is proved untrue, the grading must fall.

Enforcement of the rule blacking out WIIC from WACO, the latter concludes, unwarrantably and against the public interest deprives Wheeling viewers' privilege to enjoy basically free television. It creates, we are told, an artificial and unintended exclusivity.

Particularizing its accusation, WACO avers that due to the terrain and certain scientific factors not more than 20% of Wheeling residents can get WTRF-TV off-the-air; that an acceptable image for 80% of them is procurable only through WACO; that 50% of the residential area cannot receive satisfactory color pictures from WTRF-TV; and, indeed, in parts of Wheeling WIIC's off-the-air signal is comparable, if not preferable, to WTRF-TV's especially in color telecasts.

These allegations were traversed by WTRF-TV, as an intervenor, with affidavits and engineering data to counter those exhibited with the petition. In a memorandum and order, the Commission commented that "[t]he petitioner's engineering arguments do not persuade us of special circumstances which could justify a waiver of the program exclusivity requirement * * *." It determined that in adopting the rule the Commission had "concluded that the same-day program exclusivity was a reasonable compromise of the competing interests, and petitioner has not persuaded us of special circumstances which would justify a departure from this policy". The reference "competing interests" is to two considerations of public interest here, i. e. the continued vitality of the television stations and increased reception.

■ The first point made to us in WACO's petition is that the Commission erred in not granting a hearing on the request for waiver. The answer is plain. The petition to the Commission involved the enforcement of cne of its rules, which concededly had been adopted with procedural correctness. The assault was upon the priority of WTRF-TV. On that ground WACO contested the appositeness, not the validity, of the rule. At its option the Commission may, as it did here, adjudicate by reference to a pertinent general rule. Cf. Securities Comm'n v. Chenery Corp., 332 U.S. 194, 203, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947). In the present circumstances no hearing was demandable.[6] F P C v. Texaco Inc., 377 U.S. 33, 44, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964); United States v. Storer Broadcasting Co., 351 U.S. 192, 205, 76 S.Ct. 763, 100 L.Ed. 1081 (1956). Otherwise, the Commission would be intolerably and impractically embroiled in a multiplicity of trials. This does not mean, of course, that a petitioner goes unheard. It means only that the Commission may make its judgment on the petitioner's papers. The decision then becomes reviewable in whatever manner the statute may permit.

For like reasons, the Commission was not compelled to take evidence on the petition. Nevertheless, as its memorandum and order clearly indicate, the Commission did notice petitioner's proffered evidence. This is manifest in the Commission's summary that it was not persuaded from the "engineering arguments" of the existence of peculiar circumstances justifying a waiver.

Another reason the Commission did not stage a full dress inquiry is that it did not assume to resolve factual disputes. The engineering facts petitioner tendered were accepted on their face. The Commission found nothing in them to overthrow its policy, hereinafter detailed, that a local station's signals should have predominance at home. No unreasonableness in this policy was argued by WACO.

6. Presque Isle Co. v. FCC, 387 F.2d 502 (1st Cir. 1967), urged by WACO, is inapposite. There the Court remanded a case decided in a summary fashion by the FCC. That case, unlike this one, presented a fact situation which did not fit within the explicit terms of the rules.

■ Nor on the merits do we see error in the Commission's judgment. Appreciation of its problems is reflected in the history of CATV's origin, its development and its relation to television nationwide. It is primarily a television-ary complement. Further, a CATV system is very largely dependent upon the existence of a live station, from which is obtained its stock in trade—TV programs. Indisputably, the service it performs is nonetheless a valuable contribution to our way of life and constitutes an important industry.

Lest this companion threaten the vitality of national television, the Commission early and constantly looked for ways of blending the usefulness of both. Channel 9 Syracuse, Inc. v. FCC, 385 F.2d 969, 970 (D.C. Cir. 1967); Second Report and Order, 2 FCC2d 725, 745–46 (1966). Televisors were placed so as to assure both their permanence and their service to the public, as contemplated by the Communications Act of 1934, supra, 47 U.S.C. §§ 151, 307(b). Establishment of the contours was designed to prevent CATV from disrupting the pattern, and to keep CATV and TV in "complementary rather than conflicting roles." First Report and Order, 38 FCC 683, 699 (1955).

For its survival, of course, a station needs financial support. Commercial advertisements are a chief source and these are attracted by the number of a station's viewers, for they are the advertisers' prospective customers. Consequently, to insure its permanence a station is entitled to some protection against dilution of its coverage through CATV's introduction of the same programs from more removed stations. In weighing the hurt to CATV against the help to TV, there are several considerations besides the hope of preserving the station as a local and national asset. One is the fact that the local station is put to substantial expense in procuring programs, while CATV has so far been able to use them without sharing this burden.[7]

On balance, we cannot say the Commission has not been impartial in fulfilling its obligations. Neither the rules nor their administration are shown to be unjust, including the particular rule now in suit. Seemingly, it represents a fair adjustment and accommodation of conflicting claims to first place in the public interest. Cf. Channel 9 Syracuse, Inc. v. F C C, supra, 385 F.2d 969, 971, and Carter Mountain Transmission Corp. v. F C C, supra, 321 F.2d 359, 363, cert. den., 375 U.S. 951, 84 S.Ct. 442, 11 L.Ed.2d 312. The Commission's order is an even-handed and justified execution of this policy, n'importe the soundness and logic of the engineering arguments pressed by WACO.

WACO's petition to the Commission in effect confesses the correctness of the decision. If 20% of the Wheeling inhabitants, as the petitioner alleges, receive an adequate reproduction of videogenic entertainment or offerings from WTRF-TV, it is because the requisite intensity of the city-grade coverage was furnished by the station. The deficiency was in reception, not projection. It impairs WACO's contention that WTRF-TV should not outrank WIIC at Wheeling.

Unless WTRF-TV could and did supply requisite intensity for Wheeling, it held its license unlawfully. A station is required to provide sufficient coverage to its local community, 47 CFR § 73.685(a); see 47 CFR § 74.1103(b), and there is no argument here for a forfeiture of license. Likewise, CATV was obliged to carry its local station. 47 CFR § 74.1103(a). Obviously, neither requirement is unreasonable, but rather in furtherance and pursuit of the desiderata of the Communications Act, supra, 47 U.S.C. § 151 et seq. Then, too, they

7. A decision holding that CATV can be subjected to copyright liability will soon be reviewed by the Supreme Court. See United Artists Television v. Fortnightly Corp., 377 F.2d 872 (2 Cir. 1967), cert. granted, 389 U.S. 969, 88 S.Ct. 474, 19 L. Ed.2d 459 (U.S. Dec. 5, 1967).

allow CATV to act in its proper function —conveyance of the program to those who live behind the obstacles of natural phenomena.

Declining to disturb the Commission's order, we deny WACO's petition.

Petition dismissed.