WINCHESTER TV CABLE CO., Inc.,
Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

WHAG–TV, Inc., Intervenor.

TELEVISION ANTENNA CABLE, INC.,
Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

WHAG–TV, Inc., Intervenor.

Nos. 71–1599, 71–1799.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1972.

Decided June 2, 1972.

**116**

Frederick W. Ford, Washington, D. C. (Lee G. Lovett and Pittman, Lovett, Ford, Hennessey & White, Washington, D. C., on brief), for Winchester TV Cable Co., Inc. and Television Antenna Cable, Inc.

Katrina Renouf, Counsel, F. C. C. (Richard E. Wiley, Gen. Counsel, and Joseph A. Marino, Counsel, Richard W. McLaren, Asst. Atty. Gen. of the United States, and Howard E. Shapiro, Atty., Dept. of Justice, on brief), for respondents.

Marjorie S. Reed, Washington, D. C. (Richard Hildreth and Fletcher, Heald, Rowell, Kenehan & Hildreth, Washington, D. C., on brief), for WHAG–TV, Inc.

Before HAYNSWORTH, Chief Judge, and WINTER, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

This petition for review involves the problem of accommodating in the interest of the public the competing claims of a local television station and community antenna television systems (CATV). Winchester TV Cable Co. and Television Antenna Cable, Inc. (TELACO), which furnish CATV facilities to Winchester and Front Royal, Virginia, respectively, seek review of Federal Communications Commission orders denying their requests for waivers of the Commission's nonduplication rule.[1] We affirm the Commission.

I

Winchester Cable has operated a CATV system in Winchester, Virginia, since 1966, and TELACO has operated in Front Royal, Virginia, since 1964. Both systems have always supplied Washington, D. C. station WRC–TV, Channel 4, a National Broadcasting Company network affiliate, to their subscribers. In January 1970, a new UHF station, WHAG–TV, Channel 25, Hagerstown, Maryland, began operation as a bonus affiliate of NBC.[2] Both Winchester Cable and TELACO carry WHAG programs. The City of Winchester falls

---

[1]. Rule 74.1103(e), 47 C.F.R. § 74.1103 (e), requires that any CATV system "which operates, in whole or in part, within the Grade B or higher priority contour of any . . . television station . . . and which carries the signal of such station shall, upon request of the station licensee . . . maintain the station's exclusivity as a program outlet against lower priority or more distant duplicating signals . . . ."

When the Commission considered these applications for waiver, 47 C.F.R. § 74.1103(f) provided, "Where a station is entitled to program exclusivity, the CATV system shall, upon the request of the station . . . refrain from duplicating any program broadcast by such station, on the same day as its broadcast by the station. . . ." A recent amendment, which does not affect the outcome of this case, prohibits only simultaneous duplication of a network program. Cable Television Report & Order, 24 P & F Radio Reg.2d 1501, 1546 (1972).

Wheeling Antenna Co. v. United States, 391 F.2d 179, 181 (4th Cir. 1968), contains an explanation of the priorities the Commission assigns to signals.

[2]. A bonus affiliate broadcasts a full schedule of NBC programming, but it receives no compensation until it has established a network rate based upon American Research Bureau viewer surveys.

within the principal community contour of WHAG, and Front Royal falls within its Grade B contour. Therefore, WHAG provides signals of a higher priority to these communities than WRC. In accordance with the Commission's nonduplication rule, WHAG requested that the two CATV systems refrain from same-day duplication of NBC programs that are carried by both WHAG and WRC.[3] After the parties were unable to reach an amicable adjustment of their programming Winchester Cable and TELACO submitted requests to the FCC for waiver of the nonduplication rule. Their argument for waiver is two-pronged. The companies challenge the validity of the rule; alternatively, they contend that its application in this case has been arbitrary and capricious. The FCC, one member dissenting, denied their petitions.[4]

The Commission urges us to decline review of the challenges to the rule's validity because the issue was not initially presented to it. The record before the Commission and its orders disclose, however, that the rule was indeed questioned, though somewhat sketchily. The issue, therefore, is properly before us. *Cf.* Great Falls Community TV Cable Co. v. FCC, 416 F.2d 238, 239, (9th Cir. 1969).

## II

Winchester Cable and TELACO assert that the nonduplication rule denies them equal protection of the laws, as that concept is embodied in the due process clause of the fifth amendment. See Bolling v. Sharpe, 347 U.S. 497, 499, 74 S. Ct. 693, 98 L.Ed. 884 (1954). They predicate their argument on a comparison of the nonduplication rule with the Report and Order of Docket 16041, which they allege articulates a contradictory Commission policy.[5] Briefly, Docket 16041 is an exhortation to the major networks to make their services available to small market stations and to independent UHF stations. Speaking of these stations, the Commission said:

"[They] are generally the only ones in their communities, and thus their survival in continued operation is very much in the public interest, and must be of high concern to us, under our '307(b)' mandate to provide conditions favorable to the development of local outlets in as many communities of substantial size as possible.

"... It is obvious today that a network affiliation can be the sustenance of many otherwise marginal stations; network affiliation policies can make or break local television stations in moderately small cities. ..."[6]

The Commission concluded that it was not appropriate to adopt rules implementing Docket 16041.

The CATV systems accurately observe that Docket 16041 fosters simultaneous

3. The Commission recently granted WRC's application for a permit to increase the height of its antenna enabling it to place a Grade B signal over Front Royal as WHAG now does. When this is done, TELACO will no longer be required to protect WHAG's signal. 47 C.F.R. § 74.1103(e). This prospect, however, is without relevance to the present proceedings. Cedar Rapids Television Co. v. FCC, 128 U.S.App.D.C. 270, 387 F.2d 228, 230 (1967).

4. Television Antenna Cable, Inc., 30 F.C.C. 2d 610, 22 P & F Radio Reg.2d 391 (1971); Winchester TV Cable Co., 29 F.C.C.2d 432, 21 P & F Radio Reg. 2d 1084 (1971).
   WHAG also requested protection against Winchester Cable's duplication of

NBC network programs by WSVA, Harrisonburg, Virginia, and TELACO's duplication by WBAL, the NBC affiliate in Baltimore, Maryland. Both CATV systems sought waivers with respect to these stations, but neither has petitioned for review of this aspect of the Commission's denial.

5. Amendment of Part 73 of the Commission's Rules with respect to television network programs not made available to certain television stations, Docket 16041, 26 F.C.C.2d 772, 20 P & F Radio Reg. 2d 1687 (1970).

6. Docket 16041, 26 F.C.C.2d 772, 20 P & F Radio Reg.2d 1687, 1710 (1970).

duplication of network fare in some areas. This policy, they complain, unconstitutionally discriminates against CATV by denying it the advantages of duplication which are allowed television broadcasters.

Responding to this argument, the Commission said:

" . . . [F]ar from being inconsistent, the general policy expressed in Docket 16041 and the specific provisions of [the CATV nonduplication rule] are both in fact reflections of the same ultimate general goal: Providing the public with the greatest number of broadcast voices representing the widest possible diversity of sources. Any arguable distinctions between Docket 16041 and the nonduplication rule simply reflect the different directions from which this objective is approached in two very different contexts.

"In Docket 16041 our concern was with discouraging network procedures which operate to deny outright or limit the availability of network programs in many smaller markets. While one result of more liberal network policies in this regard might well be duplication of network services in some areas, this is not to say . . . that the Commission's objective is to achieve mere duplication of service to an area already actually receiving such network service."[7]

■ It is now settled that the Commission can regulate CATV. United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968). Moreover, since broadcasters function as transmitters of signals, they differ from CATV which facilitates the reception of signals. *See* Fortnightly Corp. v. United Artists Television, Inc., 392 U.S. 390, 398, 88 S.Ct. 2084, 20 L. Ed.2d 1176 (1968). This distinction exists even though Winchester Cable originates some local programs. *Cf.* Columbia Broadcasting System, Inc. v. Teleprompter Corp., 40 U.S.L.W. 2733 (S.D. N.Y., May 2, 1972). However, we need not decide whether this difference provides a rational basis for the Commission's refusal to apply the same nonduplication policies to both CATV and to broadcasters. The Commission has not yet adopted any rule requiring a network to duplicate its programs in Winchester or Front Royal through multiple station affiliations. Nor do the CATV systems allege that Docket 16041, absent a rule, has coerced duplication in areas they serve. At best, as the Commission observed, the constitutional attack mounted by Winchester Cable and TELACO is premature.[8]

■ The CATV systems also attack the nonduplication rule as violative of §§ 1 and 307(b) of the Communications Act of 1934. They believe the rule demonstrates that the Commission impermissibly favors television broadcasters over CATV and that it unlawfully seeks to regulate competition between them.[9] These charges are essentially the same as those we have previously considered. We adhere to the views expressed in Wheeling Antenna Co. v. United States, 391 F.2d 179 (4th Cir. 1968). There Judge Bryan thoroughly discussed the considerations which led the Commission to adopt the Second Report and Order, 2 F.C.C.2d 725 (1966), and the First Report and Order, 38 F.C.C. 683 (1965), which deal with the public's interest in both television broadcasting and CATV. Acknowledging the legitimacy and im-

7. Television Antenna Cable, Inc., 30 F.C. C.2d 610, 22 P & F Radio Reg.2d 391, 393 (1971).

8. Winchester TV Cable Co., 29 F.C.C.2d 432, 21 P & F Radio Reg.2d 1084, 1085 (1971).

9. Section 1 of the Act, 47 U.S.C. § 151, states that the Federal Communications Commission was created to make available an efficient wire and radio communication service. Section 307(b), 47 U.S.C. § 307(b), requires the Commission to foster "a fair, efficient, and equitable distribution of radio service" to the several states and communities. Radio communication, of course, includes television. 47 U.S.C. § 153(b).

portance of CATV, we nevertheless accepted the nonduplication rule as "a fair adjustment and accommodation of conflicting claims to first place in the public interest." 391 F.2d at 183. We also concluded that the Commission's efforts to assure that the roles of CATV and television remained complementary were in keeping with the Communications Act of 1934.[10] Nothing presented in these cases persuades us to alter these views.

### III

■ Winchester Cable and TELACO buttress their claim that the Commission's denial of their requests for waiver was arbitrary and capricious by alleging that their subscribers prefer WRC over WHAG; that residents of Winchester and Front Royal have a community of interest with Washington, where WRC originates, but not with Hagerstown, Maryland, the location of WHAG; that WRC can be seen by people in Winchester who orient their antennae to Washington; and that another Washington station can be received in Front Royal. These allegations were adequately supported by affidavits and we, like the Commission, accept them as true. Nevertheless, they do not establish that the CATV systems are entitled to waivers. Viewer preference and community orientation are values which the Commission has subordinated to the survival of local television stations. As the Commission observed in Television Antenna Cable, Inc., 30 F.C.C.2d 610, 22 P & F Radio Reg.2d 391, 393 (1970):

"Were nonduplication to be afforded on the basis of popularity of distant big city signals rather than on the basis of the competitive impact of their importation on local stations, as the Second Report and Order requires, we would be disregarding the essential purpose of the rule—protection of the

economic viability of local stations—to the ultimate detriment of the public who would thereby lose their only truly local service."

Uniformly, these factors have not justified waivers. *E.g.*, Port Angeles Telecable, Inc. v. FCC, 416 F.2d 243 (9th Cir. 1969); Lake City Cablevision, Inc., 26 F.C.C.2d 1054, 18 P & F Radio Reg.2d 163 (1970).

■ The fortuitous reception of WRC signals in Winchester, beyond the station's predicted contour, is not a ground for waiver. This is so although we accept Winchester Cable's assertion that many viewers in Winchester consider the WRC signal superior to WHAG's. Even if Winchester fell within WRC's Grade B contour, WHAG would be entitled to protection because Winchester is within WHAG's principal community contour. 47 C.F.R. § 74.1103(e). Moreover, it must be remembered that the CATV systems can supply WRC's local programs to their subscribers. Only WRC's NBC network programs, which are available on cable via WHAG, cannot be duplicated. Despite a substantially similar argument about the comparative merits of the signals from the deleted and protected stations, we upheld the validity of the Commission's system of priorities in Wheeling Antenna Co. v. United States, 391 F.2d 179 (4th Cir. 1968). Likewise, reception of another station's signals in Front Royal does not provide an exception to the application of the nonduplication rule.

■ Winchester Cable also complains that a denial of its request for waiver will cause it to suffer adverse economic effects forcing it to decrease its local programming. The Commission's waiver procedure, 47 C.F.R. § 74.1109(c)(1), requires the applicant to state fully and precisely all facts which demon-

---

10. Wheeling Antenna Co. v. United States, 391 F.2d 179, 183 (4th Cir. 1968); *accord*, Great Falls Community TV Cable Co. v. FCC, 416 F.2d 238 (9th Cir. 1969); Titusville Cable TV, Inc. v. United States, 404 F.2d 1187 (3d Cir. 1968);

Conley Electronics Corp. v. FCC, 394 F. 2d 620 (10th Cir. 1968); *cf.* Carter Mountain Transmission Corp. v. FCC, 116 U.S.App.D.C. 93, 321 F.2d 359 (1963).

strate the need for relief, and support the allegation that a favorable ruling would serve the public interest. The regulation has been interpreted to require a CATV operator to show "(1) the economic effect of waiver on the local TV station . . . and (2) that . . . nonduplication will have an unduly disruptive effect on [the CATV] service." Total Telecable, Inc. v. FCC, 411 F.2d 639, 643 (9th Cir. 1969). The CATV systems did not furnish this information. They ignored the effect of duplication on WHAG's advertising revenues, and they failed to supply cost data on their own local programming and the amount of their anticipated loss of income. Because of these omissions, we cannot conclude that the Commission acted arbitrarily.

■ Winchester Cable and TELACO claim entitlement to waivers on the ground that WHAG's signal is inferior because the station is plagued by a multitude of transmitting difficulties. They filed supporting affidavits citing instances when WHAG failed to transmit any signals, or encountered problems with either its video or audio transmissions. At the very least the CATV systems assert that the Commission should have afforded them an evidentiary hearing and directed its staff to conduct a field inspection.

The Commission accepted the evidence proffered by Winchester Cable and TELACO, but found that it was unsupported by objective technical information, and, accordingly, denied a hearing.[11] It did not, however, foreclose the CATV systems from pursuing this issue. The Commission explained that "documented demonstration of technically un-

acceptable service from WHAG would constitute here, as it has in other cases, . . . grounds for staying the enforcement of the nonduplication requirements pending elimination of the cause of such unacceptable service." Television Antenna Cable, Inc., 30 F.C.C.2d 610, 22 P & F Radio Reg.2d 391, 392 (1971). See also, Community Service, Inc., 21 F.C.C.2d 719, 727, 18 P & F Radio Reg.2d 605, 615 (1970).

We find no error in the Commission's ruling. Its insistence that Winchester Cable's and TELACO's claim of signal inferiority be supported by competent engineering data accords with well established Commission policy. See, e.g., Louisiana Cable TV, Inc., 26 F.C.C.2d 209, 20 P & F Radio Reg.2d 527 (1970); Valley Cable Vision, Inc., 22 F.C.C.2d 395, 18 P & F Radio Reg.2d 934 (1970). The Commission was not compelled to take evidence when the allegations and supporting papers failed to supply technical data establishing signal inferiority. Cf. Wheeling Antenna Co. v. United States, 391 F.2d 179, 182 (4th Cir. 1968). As other courts have noted, the burden placed on the Commission's staff by the large number of waiver requests and the need for expedition justifies strict enforcement of the requirement for a full and precise statement of all pertinent facts. Port Angeles Telecable, Inc. v. FCC, 416 F.2d 243, 245 (9th Cir. 1969); cf. Rio Grande Family Radio Fellowship, Inc. v. FCC, 132 U.S.App.D. C. 128, 406 F.2d 664, 666 (1968). We conclude, therefore, that the Commission's summary denial of waivers of the nonduplication rule was not arbitrary or capricious.

Affirmed.

11. Television Antenna Cable, Inc., 30 F.C. C.2d 610, 22 P & F Radio Reg.2d 391, 392 (1971); Winchester TV Cable Co., 29 F.C.C.2d 432, 21 P & F Radio Reg. 2d 1084, 1085 (1971).

In denying Winchester Cable's petition for a stay, the Commission (one member dissenting) said:

"Although we recognize that affidavits, petitions from the public, and comments from community leaders are en-

titled to some evidentiary weight on the question of signal and picture quality, we do not consider them sufficient, standing alone, to overcome the presumption of service that arises from a predicted contour. No technical data accompanied the allegations of poor quality and operations. Hence the showings made did not persuade us that a hearing was necessary to resolve the allegedly conflicting evidence."