**SOUTHWEST PENNSYLVANIA
CABLE TV, INC., California,
Pennsylvania, Appellant,**

v.

**FEDERAL COMMUNICATIONS
COMMISSION, Appellee,**

WIIC–TV Corporation, Intervenor.

No. 74-1633.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 23, 1975.

Decided June 23, 1975.

Yolanda G. Barco, Meadville, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, for appellant. Frederick W. Ford, Alexandria, Va. and Lee G. Lovett Washington, D. C., were on the brief for appellant.

David L. Kuhns, Counsel, Federal Communications Commission, with whom Ashton R. Hardy, Gen. Counsel, and Joseph A. Marino, Associate Gen. Counsel, Federal Communications Commission, were on the brief for appellee. Gregory M. Christopher, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Richard D. Marks, Washington, D. C., with whom John A. Rafter and Daniel M. Redmond, Washington, D. C., were on the brief for intervenor.

Before MacKINNON and WILKEY, Circuit Judges, and JAMESON,* Senior United States District Judge for the District of Montana.

Opinion for the court filed by Circuit Judge MacKinnon.

MacKINNON, Circuit Judge:

Appellant Southwest Pennsylvania Cable, TV, Inc. operates a community antenna television system serving approximately 1900 subscribers in the vicinity of California, Pennsylvania. On the basis of the FCC's predicted signal quality, Southwest's service area lies within the "principal community" contour of Intervenor WIIC–TV Pittsburgh, the "Grade A" contour of WTRF–TV Wheeling, W.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

Va., and the "Grade B" contour of WJAC–TV Johnstown, Pa. All three stations are NBC affiliates, and each is carried on Southwest's system. Under the FCC cable rules,[1] WIIC is entitled to highest priority and must, on request, be granted simultaneous non-duplication protection[2] on Southwest's system.

1. The cable rules provide:

*"Subpart F—Program Exclusivity*
"§ 76.91 *Stations entitled to network program exclusivity.*

(a) Any cable television system operating in a community, in whole or in part, within the Grade B contour of any television broadcast station, or within the community of a 100-watt or higher power television translator station, and that carries the signal of such station shall, on request of the station licensee or permittee, maintain the station's exclusivity as an outlet for network programing against lower priority duplicating signals, but not against signals of equal priority, in the manner and to the extent specified in §§ 76.93 and 76.95.

(b) For purposes of this section, the order of priority of television signals carried by a cable television system is as follows:

(1) First, all television broadcast stations within whose principal community contours the community of the system is located, in whole or in part;

(2) Second, all television broadcast stations within whose Grade A contours the community of the system is located, in whole or in part;

(3) Third, all television broadcast stations within whose Grade B contours the community of the system is located, in whole or in part;

(4) Fourth, all television translator stations with 100 watts or higher power, licensed to the community of the system.

(c) If the signal of a television broadcast station licensed to a community in a smaller television market is carried by a cable television system, pursuant to § 76.57(a)(4), such signal shall, on request, be afforded network program exclusivity. This provision shall not be applicable to any signal authorized or lawfully carried by a cable television system prior to March 31, 1972.

"§ 76.93 *Extent of protection.*

(a) Where the network programing of a television station is entitled to program exclusivity, the cable television system shall, on request of the station licensee or permittee, refrain from simultaneously duplicating any network program broadcast by such station, if the cable operator has received notification from the requesting station of the date and time of its broadcast of the program and the date and time of any broadcast to be deleted, as soon as possible and in any event no later than 48 hours prior to the broadcast to be deleted. On request of the cable system, such notice shall be given no later than the Monday preceding the calendar week (Sunday–Saturday) during which exclusivity is sought.

(b) Notwithstanding the provisions of paragraph (a) of this section, on request of a television station licensed to a community in the Mountain Standard Time Zone that is not one of the designated communities in the first 50 major television markets, a cable television system shall refrain from duplicating any network program broadcast by such station on the same day as its broadcast by the station. Where a cable system is required to provide same-day program exclusivity, the following provisions shall be applicable:

(1) A cable television system need not delete reception of a network program if, in so doing, it would leave available for reception by subscribers, at any time, less than the programs of two networks (including those broadcast by any stations whose signals are being carried and whose program exclusivity is being protected pursuant to the requirements of this section);

(2) A system need not delete reception of a network program which is scheduled by the network between the hours of 6 and 11 p. m., eastern time, but is broadcast by the station requesting deletion, in whole or in part, outside of the period which would normally be considered prime time for network programing in the time zone involved.

"§ 76.95 *Exceptions.*

Notwithstanding the requirements of § 76.-93:

(a) A cable television system need not delete reception of any program which would be carried on the system in color but will be broadcast in black and white by the station requesting deletion.

(b) The Commission will give full effect to private agreements between operators of cable television systems and local television stations which provide for a type or degree of network exclusivity which differs from the requirements of §§ 76.91 and 76.93.

§ 76.97 *Waiver petitions.*

Where a petition for waiver of the provisions of §§ 76.91 and 76.93 is filed within fifteen (15) days after a request for program exclusivity is received by the operator of a cable television system, such system need not provide program exclusivity pending the Commission's ruling on the petition or on the question of temporary relief pending further proceedings."

47 C.F.R. §§ 76.91, et seq. The rules have been amended since this appeal was filed, *see* First Report and Order, FCC Docket No. 19995, released April 14, 1975, but counsel for the parties indicated that the amendments do not affect the status of the instant appeal.

2. To provide non-duplication protection, a cable system must black out lower priority sta-

On March 29, 1969, WIIC made its request for network program exclusivity on Southwest's cable system, and Southwest countered by petitioning the FCC for a waiver of the non-duplication rule. It argued that (a) WIIC's signal is not of consistent quality to permit acceptable off-the-air reception in the California area; (b) viewers should have the same program available on two channels so they could choose the better signal; (c) providing non-duplication protection would place a heavy economic burden on its system; and (d) a hearing should be held. The Commission rejected Southwest's arguments as not supported by sufficient tender of proof and as irrelevant to the question of waiver, determined that Southwest's factual allegations did not indicate a hearing was necessary, and on October 3, 1969, issued its order denying the petition for waiver. 19 FCC2d 989 (1969). Southwest did not appeal from this decision.

Approximately 22 months later, on August 23, 1971, WIIC petitioned the FCC for an Order to Show Cause why Southwest should not cease and desist from its continuing violation of the network exclusivity rule. In its opposition, Southwest argued for the first time that WIIC's failure to demand non-duplication rights from all cable systems located within its signal contours was grounds for denying the cease and desist order. The Commission issued its Order to Show Cause on March 24, 1972, in which it declared:

> Southwest's contention that WIIC–TV is not currently enforcing its exclusivity rights in the same manner against other cable television systems, is irrelevant to the question whether Southwest is in violation of the Commis-

sion's rules. *See, e. g.* Community TV Corp., 17 FCC2d 940 (1969).

## App. 2.

In the course of the subsequent hearing, Southwest filed interrogatories with WIIC, one of which sought a list of all cable systems that WIIC had requested to provide non-duplication protection, inquired whether any such systems had complied with the request, and asked whether any other enforcement actions had been initiated. (App. 3–4.) The Administrative Law Judge sustained WIIC's objection to this interrogatory on the grounds that the Commission had already considered and rejected the selective enforcement claim. (App. 9.) Southwest thereafter requested a subpoena for WIIC's Research Director in order to examine him regarding alleged selective demands for non-duplication, but this request was also denied as seeking evidence on an irrelevant issue. (App. 30.) During the actual hearing, Southwest was again precluded from examining WIIC's witness concerning its practices with respect to non-duplication. (App. 90–93.)

On October 4, 1972, the Initial Decision was released, ordering Southwest to cease and desist from further violations of the non-duplication rule. (App. 261.) Southwest subsequently filed exceptions to the Initial Decision and appeared before the Review Board. The Board affirmed the rulings of the Administrative Law Judge and also rejected several additional arguments raised by Southwest during oral argument. 43 FCC2d 717 (1973). Southwest's application for review by the full Commission was denied (App. 372), and it appealed to this court.[3]

---

tions whenever two affiliates simultaneously broadcast the same network program. Thus the rules assure that cable subscribers will receive all network programs but force them to view these programs on the station holding the highest priority license to service the community. Of course, subscribers will be unable to view, *via* the cable, the local advertisements and announcements carried by the lower priority stations during the period of the black-out.

**3.** On October 8, 1974, this court denied Southwest's motion for stay. Counsel have since informed the court that Southwest is presently complying with the cease and desist order by providing WIIC with non-duplication protection.

We find Southwest's claim that the non-duplication rule is unconstitutional and violates sections 1, 303(g), 307(b), 326 and 605 of the Communications Act of 1934, as amended,[4] to be without merit. In United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968), the Supreme Court affirmed the Commission's authority to promulgate rules for cable television. Although in *Southwestern* the Court did not specifically pass on the validity of the cable regulations, it later noted:

> Their validity was, however, subsequently and correctly upheld by courts of appeals as within the guidelines of that decision. See e. g. Black Hills Video Corp. v. FCC, 399 F.2d 65 (CA8 1968).

United States v. Midwest Video Corp., 406 U.S. 649, 659 n. 17, 92 S.Ct. 1860, 1866 n. 17, 32 L.Ed.2d 390 (1972). The non-duplication rule itself was specifically upheld in Winchester TV Cable Co. v. FCC, 462 F.2d 115 (4th Cir.),[5] cert. denied, 409 U.S. 1007, 93 S.Ct. 439, 34 L.Ed.2d 300 (1972). After consideration of Southwest's arguments, we also conclude that the non-duplication rule does not violate the applicable constitutional or statutory provisions.

Southwest also argues that the non-duplication rule is inconsistent with the FCC's Report and Order in Network Television Programs, Docket No. 16041, 26 FCC2d 772 (1970), declaring a general policy of encouraging network affiliation with local stations. However, the Commission has found these policies to be consistent, Television Antenna Cable, Inc., 30 FCC2d 610, 612 (1971), and we see no reason to disagree with its reasoning at present.[6]

Although an effective waiver mechanism may be necessary to assure that the non-duplication rule affords due process,[7] the various waiver cases cited to us by the FCC[8] convince us that waivers are available upon a proper factual showing by the petitioning cable system. Thus we cannot say that the present waiver mechanism is ineffective or a sham.

We also reject Southwest's contention that the FCC has improperly delegated authority to enforce its rule to broadcasters. Since the non-duplication rule can be enforced against a cable system that refuses to comply voluntarily only through a show cause proceeding before the Commission, it is obvious that the FCC has retained ultimate authority over the enforcement of its rules and no improper delegation exists.

With one exception, we also find Southwest's procedural arguments to be without merit. As a general rule, the Commission will not consider in a show cause hearing any evidence which was or could have been presented in the waiver proceeding. Touchet Valley Television, Inc., 27 FCC2d 719, 721–22 (1971); H & B American Cablevision Co., 25 FCC2d 75, 77 (1970). Thus the show cause proceeding is ordinarily limited to the issue of compliance with FCC rules and regulations. However, the Commission has recognized an exception to this rule where the evidence is necessary to determine whether the cease and desist order is in the public interest. Bluefield Television Cable, 10 FCC2d 121 (1967).

---

**4.** 47 U.S.C. §§ 151, 303(g), 307(b), 326 and 605 (1970).

**5.** *Citing* Wheeling Antenna Co. v. FCC, 391 F.2d 179, 183 (4th Cir. 1968).

**6.** *See also* Winchester, *supra*, 462 F.2d at 418.

**7.** Community Services, Inc. v. United States, 418 F.2d 709, 711–12 (6th Cir. 1969). *See also*

WAIT Radio v. FCC, 135 U.S.App.D.C. 317, 321, 418 F.2d 1153, 1157 (1969).

**8.** *E. g.* Teleprompter of Florida, FCC Docket No. 75–106 (released Feb. 11, 1975); In re Flanery & Dingus TV and Electronics, Inc., 48 FCC2d 1022 (1974); Harrisburg Cablevision, Inc., 45 FCC2d 863 (1974). *See generally* Total Telecable, Inc. v. FCC, 411 F.2d 639, 643 (9th Cir. 1969) (showing necessary for a waiver).

■ The bulk of Southwest's arguments at the show cause hearing were related to issues which either were or should have been raised in the waiver proceeding (e. g., financial hardship, WIIC's signal strength, and the quality of WIIC's service to the California, Pa. community). Furthermore, the Commission correctly decided that a hearing on the waiver petition was not necessary under the circumstances. Wheeling Antenna Co. v. United States, 391 F.2d 179 (4th Cir. 1968). Since the waiver proceeding was valid, we see no reason the Commission should be compelled to relitigate issues in the show cause proceeding.

However, we believe that one issue raised by Southwest merits a different result in the circumstances of this case. Throughout these proceedings, the Commission has consistently taken the position that the uniformity with which WIIC has asserted its right to network exclusivity is irrelevant to the decision regarding the issuance of a cease and desist order. Even if Southwest had raised this issue in the waiver proceeding, we have no doubt that the Commission would also have summarily rejected arguments on the issue at that point. Thus we feel justified in reaching the merits of Southwest's claim that the FCC should have considered evidence relating to discriminatory enforcement of the non-duplication rule.[9]

In refusing to consider claims relating to uniformity of enforcement, both the Administrative Law Judge and the Review Board relied on the following sentence from Community TV Corp., 17 FCC2d 940 (1969):

[T]he Commission's CATV rules are of general application and their enforcement is not contingent upon television stations uniformly asserting their rights.

However, the next sentence in that decision states:

Nor has Community [the cable system] related its allegation to any claim of injury to its own operation.

*Id.* While these statements are phrased in the alternative, the clear implication is that if a cable system can show that it is being harmed by a pattern of selective enforcement, it might be entitled to a waiver of the non-duplication rule. The injury which Southwest's proffered evidence would tend to establish would be harm to its competitive position due to failure to demand non-duplication from competitors.[10]

During the hearing, the Administrative Law Judge did permit some testimony by a Southwest witness concerning the competitive situation in the vicinity of its operation. (App. 132–36, 138–42, 144–45.) However, he subsequently stated:

The only reason we ever got into that area, there was a hint there might be house-to-house competition between the two systems.

App. 146. The Initial Decision issued at the conclusion of the hearing made it clear that the only time the question of uneven enforcement of the non-duplication rule would be considered by the FCC was when the cable system presented evidence of house-to-house competi-

---

**9.** We could possibly decide this case simply by affirming the cease and desist order without prejudice to Southwest filing a new waiver petition raising the selective enforcement issue. However, without some firmer guidance from this court, it is clear that the FCC would merely cite its prior precedent and summarily dismiss the petition as raising irrelevant issues.

**10.** Southwest's Proposed Findings of Fact and Conclusions of Law stated:

The competition involved is competition for franchises. Southwest has a franchise and is operating in Centerville and the operators of the Brownsville system obtained a franchise in Centerville. The Brownsville group, because of WIIC–TV's failure to demand nonduplication from them have a distinct advantage in competing for franchises in any part of Southwest's area

App. 194.

tion with another system.[11] Since Southwest was alleging competition for franchises rather than direct competition for subscribers, its arguments were consistently rejected as irrelevant.

■ We believe the Commission has taken an improperly narrow view of the type of injury which may result to a cable system subjected to a non-duplication demand which is not also made on neighboring systems. In the situation presented in this case, where systems are endeavoring to expand and are competing for franchises in new areas, a broadcaster's demand for non-duplication protection made on only one cable system could quite possibly tip the balance in favor of the competing system. If a broadcaster has failed to make any attempt to enforce its exclusivity rights evenly after being informed of the competitive situation, it would be inequitable to hold the cable system to a more stringent standard than was being demanded from its competitors by issuing a cease and desist order. While we do not go so far as to hold that a broadcaster must demand non-duplication protection from every cable system within its priority contours before it can seek to have the rule enforced against any system, we believe that the Commission can not refuse to consider the full range of injuries which may flow from the selective enforcement of its rules in determining whether a cease and desist order is in the public interest.

■ The decision of the Review Board is affirmed except insofar as it holds that Southwest was precluded from inquiring into its claims of selective demands for non-duplication protection by WIIC and that any evidence adduced would be irrelevant to the decision to issue the cease and desist order. The cease and desist order is remanded to the Commission with directions to consider the issue of uneven enforcement of the non-duplication rule in accordance with the foregoing opinion and to afford Southwest the opportunity to gather and present any additional evidence which may be necessary for the determination of this issue. We emphasize that the bare fact of uneven enforcement will not be sufficient to obtain relief in the absence of a showing that Southwest is in some way being injured *as a result of WIIC's failure to make the same demand on competing systems* (as opposed to the normal burdens of complying with the non-duplication rule). While we in no way suggest that Southwest will ultimately be able to show it is being injured by selective enforcement of the non-duplication rule, it is entitled to have the Commission consider its evidence under appropriate standards and issue findings based thereon.

Judgment accordingly.

11. Southwest was advised during the hearing that if it could show that WIIC–TV was not demanding non-duplication protection from systems with which Southwest was in direct house-to-house competition its evidence would be received in support of an argument that it would be inequitable to hold it to a more stringent standard than was being demanded from its direct competitor. Southwest did not proffer such evidence, although it did offer to show that WIIC–TV was not demanding non-duplication protection in nearby communities.[1]

¹ Mere proximity of CATV systems does not put them into competition since a householder cannot avail himself of even next door service when his house is not within the CATV sys-

tem's franchise area. A somewhat different problem might be presented if that householder intervened to complain that the Commission is permitting its licensees to so conduct themselves that he is being denied service available to his neighbor for no apparent reason other than the whim of the licensee.

Initial Decision of Administrative Law Judge, Docket No. 19464, released Oct. 4, 1972 (App. at 262). The footnote correctly observes that mere proximity of systems does not put them into competition *for subscribers* but completely overlooks the possibility of competition for franchises.